UNITED STATES of America, Appellant,

v.

Marrian KOLESAR and Andrew Kolesar, her husband, Appellees.

No. 19640.

United States Court of Appeals Fifth Circuit.

Feb. 27, 1963.

See also 198 F.Supp. 517.

Daniel S. Pearson, Asst. U. S. Atty., Miami, Fla., Alan S. Rosenthal, John C. Eldridge, Attys., Dept. of Justice, Washington, D. C., Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Edward F. Boardman, U. S. Atty., for appellant.

Richard F. Ralph, E. S. Corlett, III, Miami, Fla.; Sherouse & Corlett, Miami, Fla., of counsel, for appellees.

Before BROWN, GEWIN and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

■ This appeal, small in amount and simple in the issue it presents, is urged on us by the Government because, so it says, of the importance of the question in the disposition of the great volume of tort litigation against it. Precisely, the question is whether in a successful suit under the Federal Torts Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 et seq., the Court can tax the costs against the Government for (a) expert witness fees or (b) the cost of a copy of pretrial depositions. The District Court sustained the Clerk's taxation of the costs, F.R.Civ.P. 54(d), over the objection of the Government.[1]

■ Actually our problem is even more simplified because, subsequent to the time of the District Court's order, we have categorically determined that expert witness fees are not taxable under 28 U.S.C.A. § 1821. Green v. American Tobacco Co., 5 Cir., 1962, 304 F.2d 70. This is the rule for private litigants. Nothing in the FTCA, or the policy behind it, affords any basis for a more liberal rule against the Government.

■ However as to the cost for copies of a deposition, we think that the express reference to court costs for FTCA suits[2] requires that we analyze the problem as though the case were between private litigants. This is the approach which the Government has taken both in its brief and on the argument.[3]

■ Before getting into the more troublesome question as to *copies* of a deposition, it is helpful to put several things at rest. First, no real dispute has been raised as to the Government's underlying contention that taxation of particular items of costs in legal (as distinguished from equitable) actions depends upon a statute. We can for our present purposes assume that this is substantially correct.[4] Next, there is the matter of the status of costs incurred for obtaining the *original* of a deposition. This, as is true of the problem under review concerning copies, brings into play § 1920(2) which allows:

"Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."[5]

Though § 1920(2) does not specifically mention a deposition, we agree with prior decisions suggesting that depositions are included by implication in the phrase

---

1. The Plaintiff-Appellee insists that the Government's motion to retax was not timely filed. There is no merit to this. The time was not jurisdictional, and the Court within its sound discretion could entertain and act upon it even though tardy. F.R.Civ.P. 6. Cf. Flowers v. Savannah Machine & Foundry Co., 5 Cir., 1962, 310 F.2d 135; Ridaudo v. Citizens National Bank, Orlando, 5 Cir., 1958, 261 F.2d 929.

2. 28 U.S.C.A. § 2412(c). "In an action under subsection (b) of section 1346 of this title, costs shall be allowed in all courts to the successful claimant, but such costs shall not include attorney's fees."

3. Except to urge that this particular section makes doubly clear that taxability of items of costs is controlled by statute, the Government does not emphasize any special immunity of the Government as to costs. See 28 U.S.C.A. § 2412(a). "The United States shall be liable for fees and costs only when such liability is expressly provided for by Act of Congress."

4. The Government urges these cases: Sprague v. Ticonic National Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; cf. Universal Oil Products Co. v. Root Refining Co., 1946, 328 U.S. 575, 581, 66 S.Ct. 1176, 90 L.Ed. 1447; Special Equipment & Machinery Corp. v. Zell Motorcar Co., 4 Cir., 1952, 193 F.2d 515; Swan Carburator Co. v. Chrysler Corp., 6 Cir., 1945, 149 F.2d 476; Gold Dust Corp. v. Hoffenberg, 2 Cir., 1937, 87 F.2d 451; Banks v. Chicago Mill & Lumber Co., E.D.Ark., 1950, 106 F.Supp. 234; Gotz v. Universal Products Co., D.Del., 1943, 3 F.R.D. 153.

5. 28 U.S.C.A. § 1920. "A judge or clerk of any court of the United States may tax as costs the following: * * * "(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; * * *."

"stenographic transcript." [6] The fact that the reporter-stenographer actually taking the deposition is not the official court reporter of that particular Court [7] is of no more consequence as to depositions than it would be as to trial evidence taken by a substitute non-official reporter with consent of the Court. [8] Of course that factor might require special scrutiny as to the basis and reasonableness of the charges rendered.

This brings us then to the question of costs for a copy of a deposition obtained by counsel for his use. We have not heretofore ruled on this, nor, so far as we have been informed, has any other Court of Appeals. [9] The Government urges, however, that by our action in an analogous situation, we are committed to its view, [10] and that in any event a great number of District Court opinions reflects a unanimity and view so obviously correct that if not bound by them, we must accept them for their sheer persuasiveness. In McWilliams Dredging Co., we held that a copy of a transcript of the trial evidence obtained by counsel (apparently on a daily copy basis) for use during the trial was not taxable. While some language in the opinion might be read as bearing on a copy of a deposition, we think for the reasons later

discussed the decision neither answers nor forecloses the problem at hand.

Of the District Court opinions, one especially urged and often cited is that of Judge Hincks in Perlman v. Feldmann, D.Conn., 1953, 116 F.Supp. 102, 110. With characteristic skill, Judge Hincks elaborates what is here the Government's opening and closing refrain: a copy of a deposition is not, as § 1920(2) phrases it, "necessarily obtained for use in the case" since the original of the deposition is on file and may be examined and used by counsel in the Clerk's office. In view of this physical access, Judge Hincks reasoned that, as with many other expenses of a lawyer and a law office, including frequently substantial ones incurred in preparation of a case for trial—the copies had to be charged off as a *convenience* to counsel. Being nothing more than a mere convenience, the costs may not be taxed. We think this is the strongest argument marshalled by the Government. [11] Likewise, we consider that it is not supportable.

■■ Conceding, as we must, that the trial court's discretion in taxing costs—broad as it has to be—does not extend it to taxing as a cost an item not permitted by controlling law, [12] we think that by the very nature of the problem whether something is *"necessarily* ob-

6. See, W. F. & John Barnes Co. v. International Harvester Co., 7 Cir., 1944, 145 F.2d 915, cert. denied, 1945, 324 U.S. 850, 65 S.Ct. 687, 89 L.Ed. 1410; Harris v. Twentieth Century-Fox Film Corp., 2 Cir., 1943, 139 F.2d 571.

7. See 28 U.S.C.A. §§ 753, 1915, 1920.

8. See, F.R.Civ.P. 30(c) as to objections to the qualifications of the person before whom a deposition is taken.

9. Although the question of taxing costs for a *copy* was not involved, taxation of some expenses for depositions not formally introduced in evidence have been approved by Courts of Appeals. See Harrison Sheet Steel Co. v. Morgan, 8 Cir., 1959, 268 F.2d 538, 544; Curacao Trading Co. v. Federal Ins. Co., 2 Cir., 1943, 137 F.2d 911; Harris v. Twentieth Century-Fox Film Corp., 2 Cir., 1943, 139 F.2d 571; W. F. & John Barnes Co. v. International Harvester Co., 7

Cir., 1944, 145 F.2d 915, cert. denied, 1945, 324 U.S. 850, 65 S.Ct. 687, 89 L.Ed. 1410.

10. McWilliams Dredging Co. v. Department of Highways, 5 Cir., 1951, 187 F.2d 61, affirming 10 F.R.D. 107, W.D.La.

11. Other cases of District Courts declining to tax costs for copies include: Prashker v. Beech Aircraft Corp., D.Del., 1959, 24 F.R.D. 305, 307–308; Firtag v. Gendleman, D.C.Del., 1957, 152 F. Supp. 226; Anderson v. General Motors Corp., W.D.Wash., 1958, 161 F.Supp. 668; Burnham Chemical Co. v. Borax Consolidated, Ltd., N.D.Calif., 1947, 7 F.R.D. 341; Ryan v. Arabian American Oil Co., S.D.N.Y., 1955, 18 F.R.D. 206; Penner v. Balfe Printing Corp., D.Mass., 1958, 21 F.R.D. 299.

12. McWilliams Dredging Co. v. Department of Highways, 5 Cir., 1951, 187 F.2d 61.

tained for use in the case," § 1920(2), inevitably calls for a factual evaluation. Common sense is compelling that Congress committed that task to the District Judge.

Once it is recognized that Congress contemplated that it would be necessary to determine what items actually came within those expressly listed, e. g., § 1821, § 1920(3), there is an abundance of common sense to justify a court allowing the costs of a deposition copy. We need mention only a few. To begin with, access in the Clerk's office frequently is only theoretical. This Circuit with its six mainland states and 17 judicial districts has a number of division points far removed from the many county seats or other principal towns in which counsel reside and have their offices.[13] It is artificial to suggest that it is a mere matter of "convenience" that a busy lawyer obtains a copy to spare himself a 75 to 150-mile trip.[14]

Even more fundamental, such a construction ignores the practicalities of preparation of a case for trial. This flies right in the very teeth of modern pretrial techniques which the Federal Rules of Civil Procedure afford, and which the Judiciary—by action, decision and administrative hierarchical agency projects —presses on all sides as one of the most effective weapons in the despairing task of coping with an ever increasing backlog of cases awaiting trial.[15] The key to pretrial is effective discovery. And discovery more and more rests on the wide latitude allowed in pretrial depositions.[16] Frequently one deposition leads to another.[17] In the process of taking a number of depositions at points and times scattered over the whole country, the fact that in the courthouse a thousand miles away there reposes an original of the deposition hardly serves the need then and there existing for a usable present copy.

To speak of a busy lawyer having to go to a Clerk's office at such times and places of work as the Clerk's regular office hours and facilities can afford for the purpose of making a close study of pretrial depositions is completely unrealistic. If, as the Rules clearly contemplate a party may be compelled to go through the various steps of discovery and pretrial conferences,[18] then it is simply a

---

13. See, e. g., Western District of Texas, El Paso Division, 28 U.S.C.A. § 124, Presidio, Texas to El Paso 192 miles; Northern District, Guthrie to Wichita Falls 115 miles; Southern District of Alabama, Northern Division, 28 U.S.C.A. § 81, Greensboro to Mobile 156 miles.

14. Though physically on file, the deposition might not actually be available for use. It should arrive under seal. F.R.Civ.P. 30(f) (1). If an order is required to open it, this sets in train motions, applications and notices, e. g., F.R.Civ.P. 7(b) (1), 6(d) etc.

15. See Report of the Judicial Conference of the United States, September 1952, page 21, to establish a circuit pretrial committee, and the Annual Report of the Pretrial Committee, see, e. g., Report, September 1962, page 43–46; September 1961, page 101, establishing the Seminar for New Judges similar to the Seminar Programs in Boulder, Colorado, 1960, Dallas, Texas 1961 (see Report of March 1962, p. 25; 1960 September proceedings, p. 36–37). See the full report of the proceedings of the Seminar on Pro-

cedures for Effective Judicial Administration, Southwestern Legal Center, Dallas, Texas, July 1961, 29 F.R.D. 193–473; see also Discovery Procedure Symposium, 5 F.R.D. 403; Kaufman, Some Observations on Pretrial Examinations in Federal and State Courts, 12 F.R.D. 363; Kincaid, A Judges' Handbook of Pretrial Procedure, 17 F.R.D. 437; Murrah, Pretrial Procedure, 14 F.R.D. 417; Handbook of Recommended Procedures for the Trial of Protracted Cases, 25 F.R.D. 351; Christenson, When Is a Pretrial Conference a "Pretrial Conference," 23 F.R.D. 129.

16. See F.R.Civ.P. 26(b). "It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence." And see Georgia Jewelers, Inc. v. Bulova Watch Co., 5 Cir., 1962, 302 F.2d 362 at 368.

17. This is one of the specific purposes, see note 16, supra.

18. F.R.Civ.P. 16.

question whether in the particular circumstances of a specific case, there is a reasonable need that counsel have a copy.

■ And where, as we have briefly indicated, a copy may be needed before trial, the demand might even be more imperative on the trial itself. Effective cross examination of witnesses frequently rests on availability of pretrial depositions either of that witness or other witnesses. This, as all lawyers—and lawyers-turned-judges—know is not a spur of the moment bit of legal forensics. Like the rest of successful trial advocacy, it depends on preparation. Preparation means selection and that means mechanical aids such as checks, underscoring, marginal notes, and the like. Such liberties can hardly be permitted with the one and only original deposition in the official court files. Conservation of precious court and judge time—one of the objects of effective pretrial—likewise demands that with respect to depositions to be offered as evidence, selectivity is both needed and very desirable.

All of these factors could be multiplied for many pages. It is a fair summary of our collective experience as practitioners that the utility (and necessity) for a deposition is not alone measured by whether all or any part of it is formally offered in evidence as such. A deposition used effectively in cross examination may have its telling effect without so much as a line of it being formally proffered.

■ What this means, of course, is that someone must determine in the particular context of a specific case just what depositions have been necessary. No one is better equipped for that than the trial Judge. Thus while we reject Judge Hincks' thesis that forbids the cost of a copy of any deposition altogether as a flat inexorable prohibition, we do not by reflex action establish a rule of like rigidity in the opposite direction. On the contrary, we keep it as flexible as the concept of necessity requires. The trial Judge must determine whether all or any part of a copy of any or all of the depositions was "necessarily obtained for use in the case." In that evaluation, great latitude and discretion must be accorded the Judge. Reversal will require an abuse of discretion.

■ On that standard the taxation of the costs for copies of the depositions in this case readily withstands attack. The suit was for substantial injuries to the wife of the plaintiff, a Chief Petty Officer in the Navy, occasioned by a prolonged heart stoppage during surgical treatment at a navy installation. Upon a finding that she was "100% or totally and permanently disabled as a result of brain damage," a condition "described as vegetative in the [Navy's] hospital records," the Court granted a $70,000 recovery. The depositions in question were of a number of medical officers, nurses and medical corpsmen. They were taken by the Government at Washington, D. C. after having several of the witnesses recalled to active duty and placed on a temporary duty status in that city for appearance in uniform. The plaintiff's case by its very nature depended almost entirely on information in the enemy's camp. It was vital in the preparation for trial and considerable portions of some of the depositions were formally offered in evidence, and extensive use was also made in the examination and cross examination of other witneses.[19]

The Judge who had nurtured this case from inception to successful end thought that this responsible lawyer had a real need for copies of these depositions. We can think of no better person nor any finer method to make that judgment.

Affirmed in part and reversed in part.

19. In the findings on the main case, made long before there was any suggestion of a controversy over costs of a trivial amount, the Judge stated: "This case by its inherent nature involves a field of law of a special nature and involving medical questions. This case was thoroughly made the subject of discovery processes and preparation for trial on the questions of liability as well as damages. Capable and experienced counsel performed outstanding service in the preparation and presentation of the evidence on trial."