**WEST WIND AFRICA LINE, LTD., Plaintiff-Appellee,**

v.

**CORPUS CHRISTI MARINE SERVICES COMPANY, and Saber Petroleum Corp., Defendants-Appellants.**

No. 86–2925.

United States Court of Appeals, Fifth Circuit.

Jan. 6, 1988.

Stanley Renneker, Steve A. Bryant, Bryant & Renneker, Houston, Tex., for defendants-appellants.

Tobi A. Tabor, Royston, Rayzor, Vickery & Williams, Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, and GEE and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The M/V TRADEWIND, a vessel owned by the Westwind Africa Line, ordered fuel from Corpus Christi Marine Services and Saber Petroleum Corporation for its return voyage from Corpus Christi, Texas, to Lagos, Nigeria. Twenty hours after leaving Corpus Christi, at a time when more than 50% of the fuel source was being drawn from the Corpus Christi bunkers, the ship's pump started to malfunction. Twice the engine room crew cleaned, repaired, or replaced affected parts, but, because of the damage, the ship's operations manager, af-

ter consulting with the chief engineer, decided to divert the vessel to Tampa, Florida, to take on substitute bunkers and replenish the supply of spare parts.

In Tampa, the ship discharged some of the Corpus Christi bunkers and sold them to a wholesaler. Westwind sent the money received for these bunkers to Marine Services and Saber. After taking on new bunkers and extra spare parts, the M/V TRADEWIND continued its voyage to Lagos. It chemically treated the portion of Corpus Christi bunkers that had been retained and used them as fuel, but it suffered some further difficulty en route.

Westwind brought an action against Marine Services and Saber, alleging that the fuel loaded in Corpus Christi had caused the M/V TRADEWIND's engine problems. Marine Services and Saber filed a counterclaim seeking to recover the full contract price of the bunkers they had furnished. The district court found that the fuel provided by Marine Services and Saber was neither merchantable nor fit for its intended use. It therefore held them liable for damages to the M/V TRADEWIND based on negligence and breach of contract. The court further held that Westwind was liable to Marine Services and Saber for the price realized for the fuel it resold in Tampa, but was not liable for the fuel retained on board and consumed. The court taxed costs against Marine Services and Saber, including costs of originals and copies of several deposition transcripts; travel expenses of a court reporter who went to Sweden to transcribe a deposition; and fees, travel expenses, and subsistence for two witnesses who came to Houston to have depositions taken rather than remaining in their hometowns and having the deposing attorneys come to them.

On appeal, Marine Services and Saber contend that:

1) Westwind's action was barred by laches;

2) The trial court's findings of fact are conclusory and thus violate Federal Rule of Civil Procedure 52;

3) The trial court's findings of fact are clearly erroneous;

4) Two expert witnesses offered by Westwind were unqualified to testify about the subjects concerned;

5) The trial court erred in denying Marine Services recovery of the price of that portion of the fuel that was loaded in Corpus Christi and not off-loaded in Tampa;

6) The trial court abused its discretion in allowing certain items as taxable costs.

### I.

■ The party who pleads laches as a defense must show not only unreasonable delay but also resultant undue prejudice.[1] Marine Services and Saber contend that they were unduly prejudiced because Westwind did not arrange for a timely joint survey of the damages allegedly caused by their fuel. They assert that, by the time Westwind filed suit fourteen months after the incident, much relevant evidence was no longer available.

■ Although Westwind may not have arranged a formal joint survey, it gave Marine Services and Saber ample opportunity to protect their interests. Westwind kept them fully informed of the difficulties at sea, the damages that had been sustained on board the vessel, and the necessity for diverting the vessel to Tampa. Before the M/V TRADEWIND had reached Tampa, Southern Star Shipping, an agent for Westwind, sent a telex to Marine Services "to put you on notice and hold you responsible for any damages and/or expenses resulting to the vessel and her engines due to the quality of fuel supplied by Corpus Christi Marine at Corpus Christi." This telex described the engine problems and thus gave Marine Services and Saber adequate notice of the damage claim.

When the M/V TRADEWIND arrived in Tampa, a representative of Marine Services

---

**1.** *See, e.g., Mecom v. Levingston Shipbuilding Co.,* 622 F.2d 1209 (5th Cir.1980); *Esso Int'l, Inc.* *v. SS Captain John,* 443 F.2d 1144 (5th Cir.1971).

and Saber boarded the vessel to obtain samples of the fuel for analysis. The representative also examined and photographed the damaged engine parts and discussed with the chief engineer the engine problems that the vessel had encountered. The information given Marine Services and Saber afforded them both notice of the claim and ample opportunity to investigate, so they were not prejudiced by the delay thereafter in filing suit.

## II.

■ The findings of fact made by the trial court do not leave us "to speculate as to the factual basis for the district court's conclusion."[2] The trial court found that "the bunkers sold by [Marine Services and Saber] were not fit for their intended use through contamination, excess bottom sediment and water, and inadequate mixing of their component fluids." This single sentence expresses both the legal conclusion that the fuel was not fit for its intended use and the findings of fact on which the court based that conclusion: that the fuel was contaminated, contained excess bottom sediment and water, and contained inadequately mixed component fluids. The findings of fact adequately support the trial court's ultimate legal conclusion. The analysis behind the trial court's decision is sufficiently clear; we do not require " 'unnecessary and unhelpful recital of nonessential details of evidence.' "[3]

■ With regard to the evidentiary support for the district court's findings, Rule 52 declares and limits our function: we are not to decide whether we would have made the same findings, but whether on the entire evidence we are left with the definite and firm conviction that a mistake has been committed.[4]

The record contains ample evidence to support the conclusion that the Corpus Christi bunkers caused the damage to the M/V TRADEWIND. Various analyses of the fuel confirmed that it contained excessive amounts of sodium, water, particulate matter, and ash, and that the components of the fuel oil were not properly blended to provide consistent viscosities or components from fuel sample to fuel sample. Shore tanks, from which the bunkers were constituted, showed high amounts of water and solids in the form of bottom sediment. Examination of the damaged engine parts and analysis of the residue found in them indicated that salt water and particulate in the fuel damaged the engine components and caused the injector nozzles to freeze up.

Marine Services and Saber would have this court reweigh the evidence produced at trial. That is not our duty. We must give deference to the trial court, for it is the trial court's province to weigh the evidence and assess the credibility of witnesses.[5] The trial court chose to credit the testimony offered by Westwind and accepted its version of the facts. That choice is the essence of the decisional process, and we cannot say that that decision was wrong merely because there was evidence to the contrary.

The trial court did, however, make one finding that requires correction. Finding of Fact 18(e) included an expense item of $2,371.40 for crew overtime in Westwind's recovery of damages. Westwind had withdrawn this expense item, so it should not have been included in the award.

## III.

The trial court admitted the testimony of Matthew Winkler and George Glytsis, two witnesses tendered by Westwind as experts. Rule 702 of the Federal Rules of Evidence specifies that a witness may be

2. *Salinas v. Roadway Express, Inc.,* 735 F.2d 1574, 1578 (5th Cir.1984).

3. *Golf City, Inc. v. Wilson Sporting Goods Co.,* 555 F.2d 426, 433 (5th Cir.1977) (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure 2579, at 711 (1971)).

4. *United States v. United States Gypsum,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

5. *See, e.g., Pavlides v. Galveston Yacht Basin, Inc.,* 727 F.2d 330 (5th Cir.1984); *Harrison v. Flota Mercante Grancolombiana, S.A.,* 577 F.2d 968 (5th Cir.1978).

qualified as an expert by knowledge, skill, experience, training, or education. It is the trial court's role to determine whether a witness is thus qualified. Its decision will not be disturbed on appeal unless it is manifestly erroneous.[6]

■ Winkler is a marine engineer and consultant, and an officer of a marine engineering company. He works with fuels, lubricants, and the relationship between those products and the power plants that use them. He is a member of various professional societies, including the American Society of Testing Materials, and is a member of various committees of ASTM, including the Marine Fuel Committee. Captain Glytsis was Operations Manager for Southern Star Shipping Company and was responsible for all operational aspects of all the vessels the company managed. He ordered the M/V TRADEWIND to divert to Tampa and therefore could testify about the necessity of the expenses incurred as a result of that deviation, including items such as port entrance fees and pilotage. He made the arrangements for and consummated the sale of the contaminated bunkers and the purchase of the new bunkers. There was ample basis for the trial court to admit the testimony of both Winkler and Glytsis.

### IV.

■ Marine Services and Saber delivered 523.14 metric tons of bunkers in Corpus Christi for $91,549.50, plus transportation charges of $2,600, which included the delivery of another item. The M/V TRADEWIND sent Marine Services and Saber $65,168.80, the full amount received for the bunkers sold in Tampa. But the unsold bunkers were kept on board the M/V TRADEWIND and used on its voyage. Equity demands that Westwind pay for this remaining fuel, for Westwind received the benefit of its use.

Westwind argues that Customs regulations dictated that the remaining fuel be left on board. What matters, however, is not why the fuel remained on the vessel but that it was in fact used. The record, however, does not enable us readily to compute the amount retained on board and the price paid for this amount. We therefore remand the case to the district court for this computation, after receiving such additional memoranda and, if necessary, evidence, as it may find appropriate.

■ Westwind also argues that, even if it owes Marine Services and Saber the cost of the fuel consumed, it is entitled to an offset for the cost of chemicals used to treat the fuel. While the action of Westwind in treating the fuel was reasonable under the circumstances, the record does not provide a sufficient showing that the chemicals added to the fuel were necessary and useful. Without such a specific showing, we cannot allow for an offset.

### V.

We turn to the amounts allowed as taxable costs. In *Crawford Fitting Co. v. J.T. Gibbons, Inc.*[7] the Supreme Court held that, in cases in which there is no basis for an award of attorney's fees: 1) absent explicit statutory or contractual authorization to the contrary, courts may not tax items other than those listed in 28 U.S.C. § 1920 as costs against the losing party; 2) Federal Rule of Civil Procedure 54(d) allows trial courts to refuse to tax costs otherwise allowable, but it does not give them the power to tax items not elsewhere enumerated; and 3) insofar as there are statutory limits to the amounts that may be taxed as costs, Rule 54(d) does not empower courts to exceed those limits. Because neither of the prevailing parties contends that there was contractual authorization for any of the disputed costs, the relevant question is whether there was any statutory authorization.

6. *Holmes v. J. Ray McDermott & Co.*, 734 F.2d 1110, 1115 (5th Cir.1984); *Perkins v. Volkswagen of Am., Inc.*, 596 F.2d 681, 682 (5th Cir. 1979).

7. —— U.S. ——, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).

Title 28 U.S.C. § 1821(a)(1),[8] expressly authorizes the payment of a witness fee and a travel and subsistence allowance for attendance by a witness "before any person authorized to take his deposition." Under this authority, the district court taxed as costs the fees and allowances paid two expert witnesses for attendance at a deposition.

█ In order to attend the deposition, the witnesses travelled more than 100 miles. Although § 1821(c)(4) authorizes the taxation of "[a]ll normal travel expenses within and outside the judicial district," many courts have not allowed travel expenses for witnesses who travel more than 100 miles[9] on the basis that, because a district court cannot use its subpoena power to compel a witness to travel more than 100 miles, a party who persuades witnesses to do so by paying their transportation expenses should not be able to tax those expenses to his adversary.[10]

The statute contains no such limitation. Section 1821(c)(4) expressly states that "travel expenses within *and outside* the judicial district shall be taxable as costs...." (emphasis added). When the deposition of a witness who resides more than 100 miles outside the district must be taken, the lawyers must choose either to travel to the witness or to induce the witness to travel to the district. The witness's willingness to make the trip reduces litigation expenses, even if it increases taxable costs.

In *Farmer v. Arabian American Oil Co.,*[11] the Court, in considering the taxation of the cost of transporting witnesses from Saudi Arabia to the United States, refused to "accept either the extreme position ... that the old 100-mile rule has no validity for any purpose or [the] argument that a federal district court can never under any circumstances tax as costs expenses for transporting witnesses more than 100 miles." While it affirmed the district court's exercise of discretion in refusing to allow that expense, it stated that Rule 54(d) "quite plainly" vests some power in the court to allow such costs. As we have previously held, the allowance of expenses for travelling a distance in excess of one hundred miles is to be determined by trial courts using their usual sound discretion.[12] In doing so, the trial court should consider the length of the journey, the necessity of the testimony, and the possibility of averting that expense. In this case, considering the necessity of the testimony of these witnesses and the expense saved by having them come to the lawyers rather than requiring the lawyers to go to them, we cannot say that the district judge abused his discretion.

█ Westwind also seeks to tax the the cost of transporting a local court reporter to Sweden to transcribe the deposition of one of Westwind's witnesses. Section 1920 permits recovery only of the court reporter's fee for a transcript, not of the reporter's travel expenses. No other statutory provision defines court reporter's fees as including travel expenses in the way that § 1821 defines the amount allowed for the fees and expenses of witnesses. Accordingly, this item should have been disallowed.

█ Although § 1920 does not specifically mention depositions,[13] a number of

---

**8.** (a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States ... or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section.

**9.** *See, e.g., Linneman Constr. Inc. v. Montana-Dakota Util. Co.,* 504 F.2d 1365 (8th Cir.1974); *Sperry Rand Corp. v. A-T-O, Inc.,* 58 F.R.D. 132 (E.D.Va.1973).

**10.** *See Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964).

**11.** *Id.*

**12.** *See, e.g., Goodwin Bros. Leasing, Inc. v. Citizens Bank,* 587 F.2d 730 (5th Cir.1979).

**13.** 1920 reads as follows:
A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

courts have interpreted § 1920(2), which refers to "fees of the court reporter" and § 1920(4), which refers to "fees for exemplification and copies of papers necessarily obtained for use in [a] case," to authorize taxing the costs of deposition originals and deposition copies.[14] In *United States v. Kolesar*,[15] this court held that the cost of a deposition copy was taxable as a matter of statutory construction under § 1920(4),[16] if the copy was necessarily obtained for use in the case.[17] The trial judge is particularly qualified to decide whether a copy is necessary,[18] and we reverse such a determination only for abuse of discretion. *Gibbons* limits judicial discretion with regard to the kind of expenses that may be recovered as costs; it does not, however, prevent courts from interpreting the meaning of the phrases used in § 1920.

The trial court awarded Westwind the costs of making copies of three depositions. The originals of two of those depositions were made part of the trial record and the copies were therefore necessary for use by Westwind during trial. Westwind expected that the third deposition would be made a part of the trial record and the copy would be used at trial. Under these circumstances, we cannot say that it was an abuse of discretion to award costs for the deposition copies. Accordingly, the cost of the deposition copies was properly taxed.

To summarize, Marine Services and Saber are entitled to:

reduction of $2,371.40 for crew overtime in the damages the district court mistakenly awarded Westwind;

reduction in damages for the value of the fuel used by the M/V TRADEWIND on its voyage from Tampa to Lagos;

reduction of the costs by $1,814.00, the cost of the court reporter's travel to Sweden.

The case is remanded for further proceedings consistent with this opinion.

---

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

**14.** *See* J. Moore, W. Taggart & J. Wicker, 6 Moore's Federal Practice 54.77 (2d ed. 1987).

**15.** 313 F.2d 835 (5th Cir.1963).

**16.** *Id.* at 838–39.

**17.** *See, e.g., Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,* 713 F.2d 128 (5th Cir.1983); *SCA Servs., Inc. v. Lucky Stores,* 599 F.2d 178 (7th Cir.1979); *Kolesar,* 313 F.2d 835 (5th Cir. 1963).

**18.** *Kolesar,* 313 F.2d at 840.