**Bennie CULLENS, James Gonder and Larry Cooper, Plaintiffs,**

v.

**GEORGIA DEPARTMENT OF TRANSPORTATION, Thomas D. Moreland, Individually and in his official capacity as Commissioner of Department of Transportation; Georgia Merit System of Personnel Administration, Charles E. Storm, Individually and in his official capacity as Commissioner of the Georgia Merit System of Personnel Administration, and State of Georgia, Defendants.**

Civ. A. No. C81–0084–MAC.

United States District Court,
M.D. Georgia,
Macon Division.

March 31, 1993.

Robert H. Stroup, Stroup & Coleman, Atlanta, GA, J. Levonne Chambers, Ronald L. Ellis, New York City, John R. Myer, Atlanta, GA, for plaintiffs.

John A. Draughon, Sell and Melton, O. Hale Almand, Macon, GA, Lorraine C. Davis, E.E.O.C., Washington, DC, for defendants.

**ORDER**

FORRESTER, District Judge.

This matter is before the court on Plaintiffs Bennie Cullens and James Gonder's motion for attorney's fees and costs under Title VII of the Civil Rights Act of 1964. This court previously denied Plaintiffs' motion for attorney's fees and expenses under 42 U.S.C. § 1988 because Plaintiffs could not be considered "prevailing parties" on the class aspects of this case. Plaintiffs now seek to recover for work performed in successfully litigating the individual claims of Messrs. Cullens and Gonder. Judgment was entered in their favor, and Cullens was awarded $1,922.46 in back pay, and Gonder was awarded $5,384.93. In addition, the defendants were ordered to

change Gonder's pay grade from Pay Grade 26, step 3, to Pay Grade 26, step 4, effective April 1, 1988. This court awarded them attorney's fees and costs pursuant to Title VII, 42 U.S.C. § 2000e–5(k). The issue before this court, then, is the amount of attorney's fees and costs to be awarded.

The present state of the law in our circuit in the award of attorney's fees is found in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988). Plaintiffs request attorney's fees in the amount of $116,375.00; paralegal fees in the amount of $1,365.00; and costs of $5,703.04. The court will first compute fees, under the teaching of *Norman*, and then consider an alternative approach.

## I. ATTORNEY'S FEES

### A. *Reasonable Hourly Rate*

To determine an objective estimate of the value of a lawyer's services, a court must multiply the hours reasonably spent on a case by a reasonable hourly rate. *Norman*, 836 F.2d at 1299. A reasonable rate is defined as "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* The burden of producing satisfactory evidence that the requested rate is in line with the prevailing market rate rests on the movant. *Id.*

Plaintiffs request $175 per hour and submit supporting affidavits. Lawyer Richard H. Horder affirms that, in his opinion, the market rate for lawyers in employment discrimination cases in the Atlanta area ranges from $170 to $200 per hour and that $185 per hour would be appropriate in this matter. Lawyer Jeffrey O. Bramlett affirms that in employment discrimination cases of this complexity involving lawyers with more than fifteen years' experience, the range of hourly rates is $175 to $325 per hour.

While also challenging the accuracy of these lawyers' assertions, Defendants first contend that the prevailing rate should be that of Macon, Georgia. Plaintiffs disagree and have submitted the supporting affidavit of a Macon lawyer, Linda Mabry, who states that in 1981, when Plaintiffs' attorney accept-

ed this case, few lawyers in Macon did civil rights work. Plaintiffs also point to the fact that a significant part of this case, which began in the Middle District of Georgia but which was taken over by the undersigned and tried, took place in Atlanta.

This court does not find Plaintiffs' argument persuasive. The presumption is that the rate of attorney's fees is that of the place where the case was filed. *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 768 (7th Cir.1982); *Maceira v. Pagan*, 698 F.2d 38 (1st Cir.1983). The sheer fact that Plaintiffs consulted with an Atlanta lawyer, who happened to be representing some plaintiffs in another civil rights action and referred Plaintiffs in this action to a fellow Atlanta practitioner, is insufficient. Nor is the assertion that not too many lawyers were handling civil rights actions in Macon, Georgia, in 1981 enough. The individual claims in this Title VII case were not complex. Lawyer Linda Mabry's statement that there were no attorneys in Macon handling "large" Title VII cases is also not applicable. The representation of these two individuals was not a large case. Plaintiffs have not shown that they actually attempted to retain a Macon lawyer with experience in Title VII discrimination cases but failed. Absent evidence of such an attempt, Plaintiffs have failed to carry their burden of showing why a market rate other than that where the case was filed is appropriate. Thus, the prevailing rate in Macon applies.

Plaintiffs have not informed the court as to the prevailing market rate for Macon. This court can judicially notice the prevailing rate and set a reasonable fee. *Norman*, 836 F.2d at 1303. The court knows that the fees charged for an experienced attorney in Macon, Georgia, handling a Title VII case range from $100 to $150 per hour. Although Plaintiffs' counsel has participated in a fair number of employment discrimination cases, the court cannot say that this case was prosecuted with efficiency and great dispatch. As this writer noted in *Norman*, "legal skill may be a function of experience, but that is not always the case. Further, legal skill has no intrinsic value unless it is used to further a client's interest, which is to obtain a just

result quickly and economically." *Id.* at 1300. Although Plaintiffs' counsel prevailed in these two claims, the time and effort expended for the results obtained do not reflect a practitioner at the peak of his practice. This is not to say that he performed inadequately, but rather to say that in a market he could not command the highest rate per hour. An hourly rate of $100 appropriately represents his efforts.

Defendants also object to the charging of all hours worked by Plaintiffs' lawyer at a partner's rate. They argue that much of the work could have been performed more than adequately by an associate billing at a lower rate. The question before the court, however, is not what the lawyer could have done, but rather what the lawyer actually did and whether it was reasonable. In this case the efforts expended at an hourly rate of $100 as enumerated below were reasonable. This rate is also less than the associate rate suggested by the defendants. The court, therefore, declines to bifurcate the rate charged by Plaintiffs' attorney in this matter.

## B. *Hours Reasonably Expended*

■ The next step is the ascertainment of reasonable hours. *"Hensley* teaches that 'excessive, redundant or otherwise unnecessary' hours should be excluded from the amount claimed." *Id.* at 1301 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). Exercising such

billing judgment means that only the hours that would be reasonable to bill a client and, therefore, one's opposing counsel "irrespective of the skill, reputation or experience" of the lawyer may be counted. *Id.* The time spent should only be for successful claims where a discrete separation can be ascertained. *Id.* at 1312.

Plaintiffs seek to recover compensation for 665.695 hours expended for these two individual claims. Defendants have submitted an affidavit of Joseph M. Freeman, a specialist in labor and employment law, objecting to 228.355 hours. The court in its analysis seeks to eliminate the hours spent on the unsuccessful claims. This task is made more difficult because it is hard to tell from the generalized descriptions which of the contacts might have referenced discrete and unsuccessful claims. While the total for a seven-year period does not seem altogether unreasonable, this simple Title VII case certainly would not have taken seven years had the class aspects of this matter been present. Although Plaintiffs assert they have tried to eliminate hours spent on the class or unsuccessful claims, this court is unsatisfied that the total hours are at all proportionate to what was needed to prosecute this case successfully.

Plaintiffs' counsel has broken down his hours as listed below. The court's award of hours is listed in the second column.

| | | Plaintiffs' Request | Court Award |
|---|---|---|---|
| DCX | Defense Counsel Contacts | 23.70 | 23.70 |
| DIX | Document Inspection, Review | 45.46 | 33.97 |
| DXX | Deposition Preparation, Taking, Review | 95.09 | 43.95 |
| JCX | Court Conferences | 22.60 | 22.60 |
| LRX | Miscellaneous Legal Research | 24.10 | 14.00 |
| MIS | Miscellaneous (atty. rate) | 14.90 | 8.20 |
| | (paralegal rate) | | .50 |
| NDI | Investigation Other than Documentary | 10.90 | .90 |
| PCX | Contacts with Plaintiffs | 53.47 | 53.47 |
| PLX | Conferences with Paralegals | .40 | .40 |
| PXX | Legal Research, Drafting of Court Pleadings, Filings | 181.955 | 181.955 |
| TPX | Trial Preparation | 93.12 | 93.12 |
| TXX | Trial | 44.80 | 44.80 |
| XXX | Post–Trial (other than fee petition) | 30.10 | 30.10 |
| FXX | Fee Petition | 25.10 | 21.00 |
| TOTAL CALCULATED BY THE COURT:[1] | | | 573.045 |

1. As noted below, it appears to this court that the case, even after reductions made by Plaintiffs' counsel, was severely over-lawyered. In effect, Plaintiffs' counsel is claiming that it took about

Defendants object to "DCX Defense Counsel Contacts" because the entries do not specify the subject matter. This objection is understandable. Were these individual claims not tied in large part with the class action proceedings, some of these conversations and the length of years of this litigation would not have been necessary. Plaintiffs' attorney indicates that these hours do not include conversations about the numerous distinct non-prevailing claims. He lists these claims as Plaintiff Cullens' Transportation Enforcement Officer claim, Plaintiff Cooper's racially-disparate treatment in discipline claim, both Plaintiffs' training center claims, the individual claims against Moreland and Storm, and the Eleventh Amendment portion of this litigation. Defendants argue that the listed contacts with defense counsel lack specificity. Defendants also point out that only five of the 23.7 hours requested occurred after the class claims were dismissed. Defendants have submitted an affidavit of Joseph Freeman stating that "many of [his] clients require detailed statements of services before payment." While the court agrees that Plaintiffs' listings do not specifically state the nature of the conversations with defense counsel, an objection stating that many clients might require more detail is not the same as evidence that it would be unreasonable to pay such a request. Given the overlap of the issues in this case, the court cannot say that the conversations with defense counsel, while perhaps touching on the class claims, did not also serve the prevailing individual claims. The court also reminds the defendants that the adjustment for inefficient use of time is considered in calculating the hourly rate charged. The court, therefore, must credit 23.70 hours in this category.

Defendants object to some hours requested for "DIX Document Inspection and Review" because of entries which they assert related to unsuccessful claims and which do not specifically show how they relate to these two successful individual claims. Although there were many documents in the class action, the number of documents related to the individual prevailing claims was not excessive. The court can only credit hours for review of documents necessary for these two cases, as opposed to documents discovered for use in collateral and unsuccessful claims. In reviewing the listed entries, the court thus credits the hours spent reviewing job descriptions, one-third of the time spent reviewing the request for production of documents, the review of promotion data and personnel rosters, one-third of the discovery review of the Georgia Department of Transportation's documents, review of leave documents, telephone calls and review of the highway foreman promotion data, analysis of non-merit promotions, review of documents related to individual claims and preparation of document lists for attendance, review of the abuse of leave issue and, finally, travel time and inspection of documents at Tennille, Georgia. This work totals 33.97 hours and was reasonable preparation given the successful claims. The court notes that any inefficiencies in this work are reflected in the lower hourly rate to be applied.

Defendants object to over one-third of the hours claimed by Plaintiffs for "DXX Deposition Preparation, Taking and Review." The majority of the objected-to hours relate to deposition preparation, taking and review, of potential witnesses who, according to Defendants, were of limited value to these two individual claims. This court disagrees. The hours spent taking the depositions of those listed in the petition for the most part are reasonable, given that virtually all worked in the District 2 Georgia DOT Office in Tennille. In addition, the travel to and from Tennille and Sandersville is credited.

The Haworth and Hawley depositions, however, were taken primarily to address the class claims and, therefore, are not credited. The travel to Macon for the Haworth deposi-

---

one-third of a usual lawyer's productive yearly hours to prepare and try a simple Title VII case. The court cannot say that the amount it calculated amounts to hours reasonably expended. It can only say that under the law of our circuit,

defendants have not furnished sufficient evidence to require additional reduction given the court's discount of the hourly rate on account of the level of skill displayed.

tion also is not credited. The court finally declines to award a listing of two and a half hours for "travel," as Plaintiffs do not specifically tell this court to which deposition the travel relates, and it would be unreasonable to bill this amount without such a description. Thus, the number of hours for attorney's fees related to the taking of depositions totals 43.95 hours.

Defendants do not object to the 22.6 hours included in the "JCX Conferences with the Court." From the court's recollection, this amount of time seems accurate and is allowed.

Defendants object to the recompense of "LRX Miscellaneous Legal Research." Some of the Plaintiffs' requests do not link the time to any particular issues or pleadings. In addition, several of the identified listings refer to issues which did not impact the Plaintiffs' successful claims. The court does acknowledge, however, that some of this research may have been necessary to ascertain what issues were actually triable. The court credits only, therefore, all specifically identified hours listed, for a total of fourteen hours.

As to "MIS Miscellaneous Activity," a portion of this work is "bookkeeping." As pointed out in *Norman*:

> To be sure, the trial judge can judicially notice a rate for bookkeeping work or work customarily done by paralegals, and it is equally true that a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment. Where such an adjustment is made, the district court must provide an identification of hours falling within the category or at least point to circumstantial evidence from which it infers that substantial work of this nature was done.

*Norman*, 836 F.2d at 1306. The review of billing and administrative details and the organizing of records and papers are not allowed, as they are not normally collectible attorney's activities. The telephone calls to the clerk totaling .5 hours is chargeable at a paralegal rate. Miscellaneous calls are not specifically enough identified to be billable. The other MIS items are allowable, for a total of 8.9 hours.

Plaintiffs request 10.9 hours in the "NDI Investigation Other than Documentary" category. Defendants object to these hours, arguing that the calls to the court clerk and the Justice Department were not activities which are normally billable. From this court's knowledge, however, these are activities which are normally billed. Time spent on calls to the Justice Department is not included, as these calls would not have been necessary absent the collateral class action. The court, therefore, awards .9 hours.

Plaintiffs request 53.47 hours for "PCX Conferences with Plaintiffs." Defendants object because the listing of many of the meetings, letters, and telephone calls is not specifically detailed. They contend that many of these conversations may have concerned unsuccessful claims and thus are not eligible for recovery. They present, however, no specific evidence to that effect. This court cannot say that these hours claimed are not reasonable, did not actually relate to the individual claims as is asserted, and would not be paid when billed. Plaintiffs are, therefore, credited with 53.47 hours in this category.

Plaintiffs' request for .4 hours for "PLX Conferences with Paralegals" is reasonable and allowed.

Defendants do not object specifically to 181.955 hours spent on "PXX Legal Research and Drafting of Pleadings and Filings." They contend, however, that more than half of this work could have been performed at an associate rate of "$125 per hour." Given that this court has already determined that the prevailing rate and skill evidenced in this matter fell below the Defendants' stated associate rate, such a finding need not be made.

Plaintiffs request 93.12 hours for "TPX Trial Preparation." Defendants argue that

this figure should be reduced another twenty percent, to 68.44 hours. Defendants provide as evidentiary support for this the fact that one of the three plaintiffs did not prevail and the fact that the two prevailing plaintiffs lost on a majority of issues raised in the lawsuit. While this court is concerned that some of these hours were unnecessary, Plaintiffs point out that they have already subtracted 24.68 hours from the total time. Plaintiffs' attorney spent in trial preparation. The court finds that the adjustment in hourly rate for the skill of the work performed adequately addresses Defendants' concerns and that these hours could successfully be billed.

Defendants also request a reduction of 11.2 hours from Plaintiffs' requested 44.8 hours for "TXX Trial Work." Defendants contend that such a reduction reflects the failure of Cooper to prevail and Plaintiffs Cullens and Gonder's failure to prevail on a number of the issues raised in the pretrial order. Plaintiffs have already subtracted 11.2 hours from the actual trial work performed. The court also notes that a number of the issues to be tried were limited by the court prior to trial. The court thus allows the 44.8 hours.

Defendants do not object to the "XXX Post–Trial" hours. The court denies their request that an associate rate be charged for half of the work. As discussed above, the court declines to bifurcate the rate charged, especially since the court's partner rate is less than the Defendants' requested associate rate. The court allows the requested 30.1 hours.

Defendants object to the 25.10 "FXX Fee Petition" hours. They argue that Plaintiffs' attorney has significant experience in civil rights litigation which allows for the recovery of attorney's fees and that Plaintiffs' counsel should have known his obligation to keep contemporaneous records. They argue, therefore, that no more than ten hours should have been spent to prepare the brief and the fee application. Defendants objection is well-taken. Plaintiffs' counsel spent 4.1 hours reviewing his records. The enor-mity of his task was exacerbated greatly by having to identify work done on the class claims versus the individual claims. This time cannot be attributed, therefore, solely to the individual claims. The court, therefore, allows only 21.00 hours in this category.

Plaintiffs also seek to recover $1,365.00 for 39 hours of Paralegal Debra Buckhammer's work. The billing rate requested is $35 per hour. Defendants object to this expenditure.

Paralegal costs are recoverable as a part of the prevailing party's award of attorney's fees and expenses but only to the extent such work is the type traditionally performed by an attorney. *Allen v. U.S. Steel Corp.*, 665 F.2d 689, 697 (11th Cir.1982). Otherwise, paralegal expenses are separately unrecoverable overhead expenses. *Id.*

The work performed by Ms. Buckhammer was document production and preparation for trial. As such, it was work traditionally performed by lawyers. Defendants do not challenge the nature of her work, nor her status as a paralegal. Thus, the paralegal fees in the amount of $1,365.00 are allowed.

### C. *Adjustments to the Lodestar*

In establishing the final fees award, once the district court has multiplied the number of hours reasonably expended on the litigation by a reasonable hourly rate and established the lodestar, the court may make adjustments for the results obtained. *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1938; *Norman*, 836 F.2d at 1302. A downward adjustment may be appropriate if the result was "partial or limited success." *Id.; Matter of Trinity Industries, Inc.*, 876 F.2d 1485, 1495 (11th Cir.1989). This limited success must be measured in comparison to the scope of the litigation. *Farrar v. Hobby*, —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992); *Norman*, at 1302; *Trinity*, at 1495. When a constitutional right is vindicated, however, the fact that the monetary result was small may not always control. *Norman*, at 1302. This is particularly the case where the outcome promotes some public purpose. *Farrar*, —— U.S. at ——, 113 S.Ct. at 578 (O'Connor, J., concurring).

Defendants request a downward adjustment of fifty percent for several reasons. First, they point to the small monetary recovery vis-a-vis the amount of the requested lodestar. Second, they argue that failing to adjust the lodestar would provide Plaintiffs' counsel with a windfall when he "exercised poor judgment in pursuing too zealously claims that were unwarranted or not worth the effort." Third, they contend that although the class-based claims had they prevailed might have resulted in the vindication of a substantial "good," the plaintiffs' recovery in this case did not benefit anyone other than themselves.

 Based on the following discussion, the court exercises its discretion to reduce Plaintiffs' lodestar amount. At the outset it is important to note that the scope of this litigation does not include the class-based claims and does not serve any special public purpose. Rather, the scope is only the claims *against* the two individual plaintiffs.[2] Plaintiffs Cullens and Gonder prevailed on their back pay claims, totalling $7,307.39. Additionally, Gonder's salary level was ordered up one step. The increase in Gonder's step level has resulted in approximately a $900.00 per year raise. It should also be noted that at the time of the judgment, Plaintiffs were earning less than $9,000.00 per year as Georgia Department of Transportation employees. Plaintiffs did not prevail on Cullens' Transportation Enforcement Officer claim, Plaintiff's training claims, the Highway Maintenance Foreman Academy claim, or individual claims against Messrs. Moreland and Storm. The unsuccessful individual claims clearly outnumber the successful ones, and the monetary award is small in absolute terms.

Plaintiffs' counsel, after endeavoring to apply the law of the circuit, and after doing his best to deduct hours spent on unsuccessful theories, claims to be entitled to fees of $116,375.00 for obtaining a recovery that has an economic value of no more than $13,000 (back wages plus the present value of front pay). Using traditional analysis, the court would compute the lodestar at $57,307. Established jurisprudence in this area gives the court no principled way to compute a discount from these figures for results obtained. Further, even if some principle could be found to guide discretion, the computation has a starting place that is in part a product of a lawyer's time piece, when it is clear that the lawyer had no thought of time because he labored out of love of cause and zeal for these clients.[3]

The court finds an authorization, in the recent decision by the Supreme Court in *Farrar,* to depart from customary procedures in ascertaining an adjustment for results obtained where the lodestar approach produces a figure that is out of all proportion to what has been achieved. In *Farrar* Justice Thomas, writing for the majority, said:

> We have already observed that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley,* ..., [461 U.S.] at 436 [103 S.Ct. at 1940]. Yet the District Court calculated the petitioner's fee award in precisely this fashion, without engaging in any measured exercise of discretion. "Where recovery of private damages is the purpose of ... civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded, as compared to the amount sought." *Riverside v. Rivera,* 477 U.S. 561, 585 [106 S.Ct. 2686, 2699, 91 L.Ed.2d 466] (1986) (Powell, J., concurring in judgment). Such a comparison promotes the court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron,* 489 U.S. 87, 96 [109 S.Ct. 939, 945, 103 L.Ed.2d 67] (1989). *Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, see Hensley,* 461 U.S. at

---

2. A district court may not merely base a downward adjustment on a ratio of prevailing claims to claims argued. *Norman,* at 1302.

3. It is understood that this was the case of most lawyers of yore who practiced in those unenlightened times before time sheets were invented.

430, n. 3 [103 S.Ct. at 1937, n. 3], or multiplying "the number of hours reasonably expended ... by a reasonable hourly rate." *Id.* at 433 [103 S.Ct. at 1939].

*Farrar,* —— U.S. at —— – ——, 113 S.Ct. at 574–75 (emphasis added).

This language seems to signal a shift in emphasis by the Supreme Court from a pure vindication model for assessing the value of the services of a private attorney general, toward a "value added" model. This is consonant with the holding in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), that constitutional rights lack value apart from damages suffered as a consequence of a deprivation. By stating that the overriding concern is the setting of a fee that is reasonable under the circumstances of the case, the court invites a cost-benefit analysis. If the loss of a private civil right has only slight or nominal value, then it follows that its vindication has negligible utility.

A pure value-added model would limit attorney's fees to no more than the amount recovered. It would seem economically illogical that the obtaining of relief could ever be worth more than the value of the thing recovered, assuming no special additional public purpose was served. It can be argued, however, that a pure *Hensley* formula sets a true economic value because it is tied to market decisions about rates and "billing judgment." The fallacy with that argument is that legal fees are not set exclusively on an hourly rate basis. Civil rights actions are only a *specie* of tort, and attorneys' fees have traditionally been only a fraction of the amount recovered in contingent fee arrangements used in most tort actions. Collections matters have traditionally been handled on a percent of recovery basis. Further, the future of attorney billing seems to be away from computations dependent on time spent.

Much of our most high-minded rhetoric, however, has never assumed that measures to preserve our liberties had to be cost-effective. One may wonder, therefore, if an economic evaluation of the worth of an attorney's services in bringing a civil rights suit would discourage this practice which has been said to be so important in obtaining compliance with these laws. *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937. This need not be the effect. First, significant consequential damages usually come with all but the most *de minimis* violations. Second, where the actual damage is relatively small and the public purpose is not significant, a value-added approach does not discourage the acceptance of employment, but simply encourages an attorney to proportion the effort to the size of the compensable wrong.

Vindication of civil rights, however, has an especially high national priority and, so, some premium over the actual amount of recovery might be allowed by courts in their measured exercise of discretion in cases where the amount recovered is small in comparison with the attorney's fees claimed, so as to give extra incentive to serve as private attorneys general. In this way the generalized public purpose of an otherwise private suit would be given recognition. A trebling of the small recovery would serve as a good measure of a fee that is reasonable under the circumstances in cases where the lodestar calculated under *Hensley* and progeny have tended to produce excessive amounts. If prospective equitable relief were obtained, a higher multiple might be appropriate. This approach proportions fees to results obtained, excludes compensation for issues raised unsuccessfully, and provides a fair incentive for lawyers to take even small cases, while bringing some economic reality to the area. The approach, also assures an adequate disincentive to violating the law even in small ways, while putting some rational limits on the transaction costs.[4]

Here, Plaintiffs recovered $7,307 in back wages plus a stream of future payments of $900 per annum. The present value of the future payments for seven years at seven percent is $4,850.[5] So, the recovery is $12,-

---

**4.** It is an empty victory if America succeeds in establishing equality in the work place only to lose most of its work to other nations who have found more inexpensive ways to maintain rea-

sonably just societies at a fraction of the cost that our legal system levies.

**5.** It would be conjectural to assume that the effect of the suit would last more than about

157, which when trebled is $36,471. While less than the amount produced by a lodestar approach, this figure is reasonable under all the circumstances of this case. Here, the case was grand in conception and, even after the intervention of the Justice Department, was continued in an expansive and severely over-lawyered fashion until its conclusion. The traditional means of determining attorneys' fees is inadequate for the task in this case of setting a reasonable fee, while the alternative methods employed by the court are faithful to the spirit of *Farrar*.

Clearly, no enhancement for an exceptional outcome is merited.[6] Enhancement, however, may be appropriate if there was a risk of not recovering a fee or there was a need to assure availability of counsel in similar cases. *Norman*, at 1302; *see also Pennsylvania v. Delaware Valley Citizens Council II*, 483 U.S. 711, 730–31, 107 S.Ct. 3078, 3088–89, 97 L.Ed.2d 585 (1987). Delay in receipt of payment may also merit "compensation at current rates rather than at historic rates." *Norman*, at 1302.

Plaintiffs' counsel took this case on a contingent basis, but Plaintiffs do not argue that an enhancement is required given this fee contingency. Rather, they submit an affidavit of a Macon lawyer, Linda Mabry, who states that in 1981, at the time this case was filed, there were not many lawyers in Macon, Georgia, who would take complex civil rights cases, particularly class actions. They argue that a straight lodestar award itself would reflect this fact.

As noted above in the court's discussion of the appropriate prevailing market rate, it may be true that Macon may not have had a great number of lawyers handling Title VII race discrimination cases like this one in 1981. No specific evidence to that effect, however, has been presented to the court. Lawyer Mabry makes repeated reference only to the fact that few Macon lawyers

would take *complex* civil rights individual or *class action* cases. The case under discussion in this order, however, was neither complex nor a class action. Further, there is no evidence presented that Plaintiffs ever sought a Macon lawyer or firm. As Mabry herself states, she specializes in civil rights and employment law in Macon. Furthermore, no showing is made that today there are not sufficient attorneys in the Macon area that could and would take on the type of case now before the court. The court, therefore, declines to enhance the lodestar or prevent its reduction on the basis of a contingency fee arrangement.

As to the issue of delay in payment as a basis for adjustment in the lodestar, the court recognizes that Plaintiffs' counsel has waited since the individual judgments were entered on June 21, 1988, for this award. This delay in the initial calculation was compensated for by an award that relates to results obtained, which in turn is computed from damages that increased only as a function of the passage of time. That would seem adequate recompense for the delay.

## II. COSTS

### A. *Depositions*

Pursuant to 28 U.S.C. § 1920, deposition expenses are recoverable when the deposition was "necessarily obtained for use in the case." *Corsair Asset Management, Inc. v. Moskovitz*, 142 F.R.D. 347, 353 (N.D.Ga.1992) (citing *United States v. Kolesar*, 313 F.2d 835 (5th Cir.1963)). The deposition does not have to be used at trial but must have appeared reasonably necessary at the time it was taken. *Id.; Allen*, 665 F.2d at 697. Deposition costs which are redundant or merely for investigation are not recoverable. *Corsair*, 142 F.R.D. at 353.

---

seven years, as too many other factors will have been at work by then.

**6.** If the results obtained are particularly remarkable, enhancement of the lodestar may be appropriate. Such cases are extremely rare, however, because "the law is usually faithful to its teachings," and so most outcomes cannot be unexpected. *Id.; see also Pennsylvania v. Delaware Valley*

*Citizens Council I*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). Finally, this court does not consider the intangible, non-pecuniary weight of this case particularly remarkable, and no "specific spillover benefits for non-parties" have been shown. *Popham v. City of Kennesaw*, 820 F.2d 1570, 1580 (11th Cir.1987).

Plaintiffs first seek to recover the costs of depositions taken of Plaintiffs Cullens and Gonder, as well as Cooper. Clearly, the depositions of the prevailing Plaintiffs were necessary to the case. As Cooper is not a prevailing party, and no showing has been made of why his testimony would have been necessary for Gonder and Cullens' claims, the expense of his deposition is disallowed. The court, therefore, allows two-thirds of the total "Cullens/Gonder/Cooper" costs, $151.00. Depositions of Lyons, Shurling, Walden, Carter, Burns, Brantley, and Attaway were in large part necessary for these individual claims, and the $1,108.83 is, therefore, allowed.

As to the two depositions taken of Reginald Hunt, the first concerned primarily investigating issues related to the class certification. This first deposition was not related, therefore, to a prevailing party and is disallowed. The second deposition, however, while not used extensively at trial, was reasonably taken because it set forth the general personnel policies of the department which might have been in issue at trial. This $105.50 cost is, therefore, allowed.

Depositions of Joan Haworth, Steven Cole, and Barbara Hawley were not reasonably taken in relation to these prevailing claims. These deponents are statistical experts. Statistical analysis and "cohort" analysis were not admitted at trial and were not necessary to prosecuting the successful individual claims. These costs are, therefore, disallowed.

## B. *Copying Costs*

 Section 1920 provides that a party seeking to recover photocopy costs must show that "the copies were necessary and provided either to the court or the opposing party." *Corsair,* 142 F.R.D. at 352. The party seeking to recover such costs must present evidence regarding the documents copied, including their use or intended use. *Id.* (citing *Fulton Federal Savings & Loan Association of Atlanta v. American Ins. Co.,* 143 F.R.D. 292, 300 (N.D.Ga.1991)). The mere assertion that such copying was necessary is insufficient to permit recovery. Plaintiffs have failed to show why the copies

were made and how the copies were used or intended to be used. Photocopying costs are, therefore, disallowed.

## C. *Long Distance Telephone Calls*

Plaintiffs seek $381.89 for long distance phone charges. Because 28 U.S.C. § 1920 does not provide for the recovery of long distance calls, these costs are disallowed. *Corsair,* 142 F.R.D. at 351.

## D. *Travel/Motel Charges*

In order for a claimed expense to be reimbursed, the expense must be encompassed by § 1920 or some other specific statute. *Id.* As Plaintiffs have cited no basis for recovery of travel expenses, as separate costs they are disallowed.

## E. *Other Costs*

Plaintiffs list court filing, docket and service of process fees totaling $102.00 and costs of a transcript for the end of a trial conference with the court of $624.00. Section 1920 clearly allows for such expenses to be taxed.

Witness fees of $287.50 for James Burns are also requested without objection. Section 1920 allows for witness fees of $40 per day, plus travel expenses up to 100 miles. Plaintiffs' request, however, does not specifically enumerate how many days Mr. Burns was a witness and from where he had to travel. This request must, therefore, be denied.

Finally, Plaintiffs' counsel emphasizes that he declined to accept cases because of his commitment to this case. While such single-minded dedication is admirable, the decision of a lawyer to accept or not to accept a case given his current workload is his own. This case ended up a rather simple one. To the extent that it was overworked by Plaintiffs' counsel and he forewent other opportunities, a lesson in economics has been taught.

## III. CONCLUSION

This court credits 572.545 hours billed at $100.00 per hour and .5 hour billed at $35.00 per hour. The lodestar would be, therefore, $57,262.00. In light of the foregoing discussion, however, only an adjusted award of

attorney's fees in the amount of $36,471.00 is merited and allowed. The court also awards paralegal fees in the amount of $1,365.00. Taxable costs as enumerated above total $2,089.33.

SO ORDERED.