*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0327P (6th Cir.)
File Name: 01a0327p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

DR. MARTIN TREPEL,
　　　*Plaintiff-Appellant,*

　　　*v.*

ROADWAY EXPRESS, INC.,
　　　*Defendant-Appellee.*

No. 99-3457

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 95-00422—Dan A. Polster, District Judge.

Argued: January 25, 2001

Decided and Filed: September 17, 2001

Before: JONES, BATCHELDER, and CLAY, Circuit
Judges.

————————————

**COUNSEL**

**ARGUED:** P. David Palmiere, McCONNELL &
PALMIERE, Bloomfield Hills, Michigan, for Appellant.
Deborah L. Hamilton, JONES, DAY, REAVIS & POGUE,
Cleveland, Ohio, for Appellee. **ON BRIEF:** P. David
Palmiere, McCONNELL & PALMIERE, Bloomfield Hills,
Michigan, for Appellant. Deborah L. Hamilton, Steven E.

1

Sigalow, JONES, DAY, REAVIS & POGUE, Cleveland, Ohio, for Appellee.

JONES, J., delivered the opinion of the court, in which CLAY, J., joined. BATCHELDER, J. (pp. 17-19), delivered a separate dissenting opinion.

———————

**OPINION**

———————

NATHANIEL R. JONES, Circuit Judge.  Plaintiff, Dr. Martin Trepel ("Trepel"), sued Roadway Express, Inc. ("Roadway Express or Roadway"), a common carrier, in the United States District Court for the Northern District of Ohio for damages to an article of African tribal art.  After receiving a jury verdict in his favor, Trepel moved for attorney's fees in the amount of $141,435.00 and "taxed costs" in the amount of $40,100.84.  These matters were referred to Magistrate Judge James S. Gallas.  Magistrate Judge Gallas issued a Report and Recommendation in which he recommended that the plaintiff's motion for attorney's fees be denied and found that only $18,171.94 of Trepel's costs were properly taxable. The district court adopted the Report and Recommendation *in toto*.  Trepel now appeals the decision of the district court. For the reasons stated below, we **VACATE** the district court's decision regarding attorney's fees and **VACATE** the district court's decisions regarding the taxation of witness travel expenses and the taxation of expert witness deposition fees.

**I.  Facts**

In 1993, plaintiff purchased an African tribal carving known as the "Baga serpent" in New York City for $15,000. Shortly thereafter, Trepel arranged to have the defendant, Roadway Express, transport the object to Phoenix, Arizona, where it would become part of the decor of the plaintiff's home.  During transport, the serpent was broken into three major pieces and several minor pieces.  Plaintiff filed a claim

Further, the idea that a work of art slides from the specific classification of subsection (C) to the broader classification of "personal effect" under subsection (A) merely because the owner intends to place it in a home defeats the purpose of the original categorization.  Had congress intended to allow objects to occupy more than one category, it could have expressly said so in the statute.  Instead, it created three subsections, and required alternative dispute resolution and recovery of attorney's fees for only one of these subsections. I would hold that the Baga serpent is a "work of art" that fits exclusively within the class of goods listed in the third proviso.  Accordingly, I would hold that the fee-shifting language is inapplicable to a suit brought for damage of a third-proviso item.

Second, I do not believe the district court abused its discretion in limiting travel expenses taxed as costs.  An abuse of discretion is defined as a "definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Mack*, 159 F.3d 208, 217 (6th Cir. 1998), (quoting *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989)).  I am simply unconvinced that enforcing the "100 mile rule" and disallowing certain travel expenses rises to such a level. Indeed, in my view, approving these expenses would have been an abuse of discretion.

value, and easily replaceable. This is the category of goods to which the fee-shifting provision specifically applies. *See* 49 U.S.C. § 11711(d) (1993) (repealed 1995). Second proviso goods, listed in subsection (B) are similar in character to first proviso goods, but are employed in a business or institutional setting. Third proviso goods are specialty items, such as objects of art, "which because of their unusual nature or value require the specialized handling and equipment employed in moving household goods . . . ." 49 U.S.C. § 10102 (11)(C) (1993) (repealed 1995).

Invoking the plaintiff's explanation of the reasons underlying the passage of the fee-shifting language, there is a clear logic to requiring that the categories be read as exclusive of one another. Because of the relatively low cost and easy replaceability of first proviso goods, a customer paying his own attorney's fees is unlikely to resort to litigation for redress. Therefore, the availability of alternative dispute resolution, and the provision for recovery of legal fees is vital to the congressional intent of protecting consumers from careless movers who might hide behind the high wall of litigation costs. Although second proviso goods are similar in character to their first proviso brethren, the owners of second proviso goods (businesses and institutions) hold significantly more bargaining power and resources than does a homeowner who might employ common carriers on only a few occasions in his lifetime. Businesses and institutions are more likely to use common carriers frequently, and would often be able to bring economic pressure to bear by threatening to withhold future business, and would be more able to shoulder the costs of litigation if necessary. Third proviso goods are of such significant value and unique nature that the potential damages for loss or injury to them would outweigh the costs of litigation, making suit a meaningful and effective remedy and deterrent. Further, the uniqueness of third proviso goods is likely to require expert opinion to establish their value, making some forms of alternative dispute resolution unappealing.

with the defendant for the damages to the Baga serpent. Defendant did not contact Trepel about any alternative dispute resolution forum or initiate proceedings in such a forum. Plaintiff filed suit in federal court.

At the jury trial in 1997, plaintiff called a number of witnesses, many of whom came from outside the State of Ohio. The plaintiff's witnesses included Dr. Fredrick Lamp, Curator of African, American and Oceanic Art for the Baltimore Museum of Art; Dr. Robert J. Koestler, a research scientist and instructor in biodeterioration at the NYU Institute of Fine Arts; Dr. Dennis Stevenson, Director of the Harding Laboratory at the New York Botanical Gardens; Mr. Leonard Kahan, owner of an African art gallery in New York; Michael Chisolm, a teacher, scholar and appraiser of African art; and JoAnn Hahn; a resident of Phoenix, Arizona who went to the Roadway Express terminal to take delivery of the Baga serpent for Trepel.

Plaintiff also called three rebuttal witnesses: Michael Oliver, an African art dealer; Brian Douglas Newton, former Chairman of the Department of Art of Africa , Oceania and the Americas at the Metropolitan Museum of Art; and Francine Ndiaye, former Curator of African Art at the Musee de l'Homme in Paris. Mr. Kahan estimated that the fair market value of the undamaged Baga serpent was 1.5 million dollars. Mr. Chisholm stated that the fair market value was 2.5 million dollars.

The jury found for the plaintiff and set damages at $80,000. Judgement in this amount was entered on July 17, 1997. On September 8, 1997, plaintiff moved for attorney's fees under Section 7 of the Household Goods Transportation Act, 49 U.S.C. § 11711(d) (1993) (repealed 1995), which was in effect when the Baga serpent was shipped in 1993. On September 12, 1997, plaintiff filed a bill of costs. Plaintiff's bill of costs sought to tax the travel costs of his witnesses from New York (Dr. Koestler, Dr. Stevenson, Mr. Kahan, Mr. Chisholm, Mr. Newton, Mr. Oliver); Baltimore (Dr. Lamp); Paris (Ms. Ndiaye); and Phoenix (Ms. Hahn). Trepel claimed

that the total amount of these travel costs was $12,716.35. He also requested an order compelling defendant to reimburse him for $8,525.00 in expert witness fees that he paid Dr. Lamp, Dr. Stevenson, Dr. Keostler, Dr. Rosenburg, Mr. Kahan, and Mr. Chisholm to appear at depositions taken by the defendant. The district court referred the motion for attorney's fees and the motion for costs to Magistrate Judge Gallas.

The magistrate judge issued a Report and Recommendation in which he recommended denying plaintiff attorney's fees on the ground that plaintiff was not entitled to recover attorney's fees because the item involved is an "object of art" that is exempt from the fee-shifting provision of 49 U.S.C. § 11711(d). Regarding the witnesses' travel expenses, the magistrate judge proposed that the plaintiff only be allowed to recoup travel costs for travel within 100 miles of the courthouse (200 miles total for each witness) and recommended that these transportation costs be limited to $0.31 per mile. Based on the distance and rate limitations, the magistrate judge recommended granting the plaintiff $62.00 in travel costs for each of his nine witnesses. Finally, the magistrate judge proposed that plaintiff's request for expert-related deposition expenses be denied on the grounds that it was not authorized by statute. The magistrate judge's findings were adopted by the district court *in toto*.[1]

---

[1] In the meantime, Trepel, who was dissatisfied with the $80,000 jury verdict, appealed the trial court's damages judgment on several grounds, including the argument that the trial court abused its discretion by not allowing experts to testify regarding the bases for their opinions as to the value of the carving. This court agreed that the experts should have been allowed to testify about the basis for their opinions. On October 15, 1999 the jury's award of damages was vacated and the case remanded to the trial court for a new trial on the damages issue only. Pl. Reply Br. at 14-15.

---

**DISSENT**

---

ALICE M. BATCHELDER, Circuit Judge, dissenting. I respectfully dissent.

First, I think the majority misconstrues the statute authorizing attorney's fees by finding that items may be classified in multiple categories. I think that if we accept the majority's reading that the provisos set out in the statute are not mutually exclusive, we rob 49 U.S.C. § 11711(f) (1993) (repealed 1995) of any purpose, and render the distinctions drawn by Congress meaningless.

In his brief, the plaintiff advances the argument that "the fee-shifting provisions of the Act were aimed at curing a social ill arising in the interstate shipping industry." He elaborates on the problem of suing for damage done to household goods, noting: "Everyday experience teaches that most household property shipped by common carrier has less value than the cost of any litigation to recover for its breakage. Thus in most settings, the carrier could simply hide behind the expenses of litigation, secure in the knowledge that the injured customer is not going to start an expensive lawsuit to pay for a comparatively less expensive piece of property." *Id*. This point is well taken. However, it seems to me that the obvious exception to a carrier's being able to "hide behind the expense of litigation" is when the property damaged is of significant value or rarity. The Baga serpent is just such an item.

The tripartite proviso scheme set forth by Congress supports the idea that only items of relatively low value in relation to the costs of litigation are covered by the fee-shifting provision. The type of goods listed in subsection (A), typically referred to as "first proviso" goods, encompasses standard household items such as furniture, fixtures, knick-knacks and other goods that are of relatively low monetary

expert witness deposition costs under §1920 precluded him from recovering them under Federal Rule of Civil Procedure 26, which governs discovery expenses. The district court implicitly adopted this suggestion when it adopted the magistrate judge's Report and Recommendation *in toto*.

Although it is clear that Trepel is not entitled to deposition costs under Rule 54, this fact does not preclude him from obtaining post-judgment reimbursement for these costs. As the magistrate judge noted, the Supreme Court's *Crawford* decision only precludes recovery under Rule 54 when there is no explicit statutory authority. In this case, statutory authority is provided by Rule 26. *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332 (5th Cir. 1995) (Rule 26(b)(4)(C) provides an independent basis for recovery of expert fees as part of discovery); *Chambers v. Ingram*, 858 F.2d 351, 360-61 (7th Cir. 1988) (litigant's post-judgment request for costs under Rule 26(b)(4)(C) was timely even though he never requested such costs at the time of deposition); *Lancaster v. Lord*, No. 90 Civ 5843, 1993 WL 97258, at **1 (S.D.N.Y. Mar. 31, 1993) (same). Therefore, we remand this case to the district court to determine what deposition costs Trepel is entitled to under Rule 26.

### III.  Conclusion

For the reasons stated above, we **VACATE** the district court's holding that plaintiff is not entitled to attorney's fees under 49 U.S.C. § 11711(d) and **REMAND** for a determination as to whether Trepel waived his right to attorney's fees, and a calculation of those fees, if necessary. We also **VACATE** the district court's determination of travel expenses and **REMAND** to allow the district court to explain its decision to limit witness travel expenses to a 100 mile radius, and to determine travel expenses accordingly. Finally, we **VACATE** the district court's refusal to grant expert witness deposition costs and **REMAND** to the district court for a determination of what expert witness fees Trepel is entitled to recover under Federal Rule of Civil Procedure 26.

---

### II. Discussion

### A.   Attorney's Fees

As noted above, the district court (adopting the magistrate judge's Report and Recommendation) denied Trepel's motion for attorney's fees on the ground that there was no statutory basis for such an award.[2] On appeal, Trepel contends that the district court erred because he is entitled to attorney's fees under the Household Goods Transportation Act. 49 U.S.C. § 11711(d) (1993) (repealed 1995). The denial of attorney's fees is generally reviewed for abuse of discretion. *See Cramblit v. Fikse,* 33 F.3d 633, 634 (6th Cir. 1994). However, when the denial of attorney's fees is based on the construction of a statute, we exercise *de novo* review. *See Columbia Gas System Inc. v. United States,* 70 F.3d 1244, 1246 (Fed Cir. 1995).

### 1.   Background

In 1980, Congress enacted the Household Goods Transportation Act, 49 U.S.C. §10101 et seq., to remedy problems in the interstate shipping industry. One of the problems apparently faced by shippers of household goods was that common carriers refused to recognize their claims because the carriers knew that few household goods shippers would engage in an expensive lawsuit to recover for damage to common household items of relatively little value.[3] In

---

[2]It is well established that a prevailing party must have a statutory basis in order to recoup attorney's fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 255 (1975); *Cooper v. Williamson County Bd. of Educ.*, 820 F.2d 180, 182 (6th Cir. 1987).

[3]House Report No. 96-1372 states that: "The household goods moving industry is the single most frequent subject of consumer complaints to the Interstate Commerce Commission. During 1979, the Commission received 24,609 consumer complaints, an average of 2.1 complaints per 100 shipments transported. . . . 43.13 percent [of these complaints] were related to the loss or damage of goods and the handling of complaints arising from such loss or damage . . . ." H.R. REP. NO. 96-

order to rectify this problem, the Household Goods Transportation Act proposed that shippers provide arbitration and dispute resolution programs so that customers could recover damages without going to court. *See* H.R. REP. NO. 96-1372, at 12 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4271, 4282 ("The new section establishes minimum requirements for informal dispute settlement programs to be established by household goods carriers for the purpose of resolving shipper disputes in a fair, expeditious, and inexpensive manner.").

In order to "encourage" carriers to make dispute settlement programs available, the Household Goods Transportation Act stipulated that common carriers who did not make a dispute resolution program available would be liable for attorney's fees if a customer prevailed on his claim. *See id.*; 49 U.S.C. § 11711(d) ("the shipper shall be awarded reasonable attorney's fees if . . . no dispute settlement program approved under this section was available for use by the shipper to resolve this dispute."). However, the Act did not make attorney's fees available to all successful litigants. According to § 11711(f), the attorney's fee-shifting provision only applied "in the case of collect-on-delivery transportation of those types of household goods described in section 10102(11)(A) of this title." 49 U.S.C. § 11711(f) (1993) (repealed 1995).

49 U.S.C. § 10102(11) provided the definition of "household goods." This provision described three categories of household goods.

(A) personal effects and property used or to be used in a dwelling when a part of the equipment or supply of such

---

1372, at 2 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4271, 4272. "[T]he Committee recognizes that many users of household goods carriers are ordinary consumers unfamiliar with how the industry works and without the economic leverage of commercial shippers. These persons tend to be more vulnerable than other shippers and, hence, in need of protections that are not necessary for other motor carrier shippers." *Id.* at 5, *reprinted in* 1980 U.S.C.C.A.N. 4271, 4275.

---

*Co. v. MRF Ltd., Inc.*, 181 F.3d 759 (6th Cir. 1999) (quoting *West Wind Africa Line v. Corpus Christi Marine Services Co.*, 834 F.2d 1232, 1237 (5th Cir. 1988)). Given that the magistrate judge and the district court did not discuss any of these factors, or any other factors in any depth, we remand this case to the district court so that it may specify the reasons why it exercised its discretion to deny travel expenses outside of the 100 mile radius for all nine of Trepel's witnesses.[7]

## C.   Deposition Fees

As noted above, the magistrate judge also proposed rejecting Trepel's request for an order compelling defendant to reimburse him for $8,525.00 in expert witness fees that he paid Dr. Lamp, Dr. Stevenson, Dr. Keostler, Dr. Rosenburg, Mr. Kahan, and Mr. Chisholm to appear at depositions taken by the defendant. According to the magistrate judge, Federal Rule of Civil Procedure 54 limits the types of expenses that a court may tax to those set out in 28 U.S.C. §1920 (and further explained in §1821), absent contract or explicit statutory authority to the contrary. J.A. at 44A (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987)) (28 U.S.C. §1920 now embodies the kinds of expenses that a federal court may tax as costs against a losing party). After reviewing the evidence, the magistrate judge held that since Trepel was not entitled to expert witness fees under §1920 or §1821, he was barred from recovering any such fees under Rule 54. The magistrate judge also seemed to suggest that the fact that Trepel was not entitled to recover

---

[7] In *Linneman Constr., Inc. v. Montana-Dakota Util. Co., Inc.* the Eighth Circuit held that travel expenses for additional mileage "may be justified when the witness is a necessary and material witness in the proceedings and does not give merely redundant or cumulative testimony." 504 F.2d 1365, 1372 n.13 (8th Cir. 1974). In this case, Trepel argues that the difficulty of assessing the value of African art required him to bring in numerous experts from outside of Ohio. Although it may not have been necessary for Trepel to have nine witnesses testify concerning the value of the Baga serpent, it seems probable that at least some of these out-of-state witnesses were necessary given the circumstances of this case.

Furthermore, we do not believe that the magistrate judge's suggestion that the plaintiff is seeking to bill the defendant for overly generous transportation services is supported by the record. According to the plaintiff's submissions, seven of the nine witnesses in question flew coach class to Cleveland. J.A. at 231. Although it is true that two witnesses flew first class, the plaintiff did not request full compensation for the first class tickets, but rather submitted expenses based on the relevant coach fare. J.A. at 231, 238. In addition, the plaintiff's bill for cab fare was based on a $67 per trip fee for nine round-trip trips from the Cleveland Airport to the Federal Courthouse in Akron, Ohio. According to Trepel's submissions, the price for each trip from Cleveland to Akron was cheaper than the common taxi fare.[6] This assertion is perfectly plausible given that the distance from the Cleveland Airport to the Federal Courthouse in Akron is approximately 40 miles. Since the defendant did not supply any evidence that lower airfares or cab fares could reasonably have been obtained, we reverse the district court's decision to limit the plaintiff's expenses to $0.31 per mile.

### b.)  Distance Restriction

We find ourselves unable to review the district court's decision to limit the plaintiff's travel expenses to a 100 mile radius because neither the magistrate judge nor the district court provided an adequate explanation of its reasons for this limitation. *See Subscription Television, Inc. v. Southern California Theatre Owners Ass'n*, 576 F.2d 230, 234 (9th Cir. 1978) ("[T]he trial court must state its reasons for the denial of costs so that the appellate court will be able to determine whether or not the trial court abused its discretion.").

"In considering whether to allow expenses for travelling in excess of 100 miles, the court should consider the length of the journey, the necessity of the testimony, and the possibility of averting the travel expense." *Soberay Machine & Equip.*

---

[6] According to the plaintiff, the common taxi fare from the Cleveland Airport to Akron is approximately $70. J.A. at 233.

dwelling . . . [but not] property moving from a factory or store, except such property as the householder has purchased with intent to use in his dwelling and which is transported at the request of, and the transportation charges paid to the carrier by, the householder;

(B) furniture, fixtures, equipment and the property of stores, offices, museums, institutions, hospitals or other establishments . . .except . . the stock-in-trade of any establishment, whether consignor or consignee, other than used furniture and used fixtures, except when transported as incidental to moving of the establishment, or a portion thereof, from one location to another; and

(C) articles, including objects of art, displays and exhibits, which because of their unusual nature or value require specialized handling and equipment usually employed in moving household goods . . . except that this subparagraph shall not be construed to include any article, whether crated or uncrated, which does not, because of its unusual nature or value, require the specialized handling and equipment usually employed in moving household goods."

49 U.S.C. § 10102(11) (1993) (repealed 1995). As noted above, the attorney-fee shifting provisions only applied to "personal effects and property used or to be used in a dwelling" described in part A.

### 2.   Analysis

On appeal, Trepel argues that he is entitled to attorney's fees because the Baga serpent that he shipped is a "personal effect . . . to be used in a dwelling" under 49 U.S.C. § 10102(11)(A). In response, defendant Roadway Express sets forth two different arguments as to why Trepel is not entitled to attorney's fees under this statute.

### a.)  Shippers Covered

First, Roadway argues that it is not required to pay attorney's fees under § 11711(d) because it is not a member of the household moving industry.  In support of this argument, Roadway points to legislative history which it argues indicates that the Household Goods Transportation Act was intended to apply to the "household goods moving industry apart from the rest of the trucking industry." H.R. Rep. No. 96-1372, at 2, *reprinted in* 1980 U.S.C.C.A.N. at 4271.  Roadway argues that it is clearly not part of the household goods moving industry because it is not certified to carry household goods; it does not go to any shipper's home and transport his or her household contents to a new residential location; it does not have specialized equipment and trained personnel; and it does not hold itself out as a mover of household goods. Accordingly, Roadway concludes it is not subject to the fee-shifting provisions of the Household Goods Transportation Act, and therefore is not required to pay Trepel's attorney's fees.  We disagree.

First, the legislative history does not clearly indicate that Congress intended the fee-shifting provision of section 11711(d) to apply solely to the household goods moving industry. Rather, the House Report only suggests that various factors prompted the Committee on Public Works and Transportation to "consider[] . . . the household goods moving industry apart from the rest of the trucking industry." *Id.* at 2, *reprinted in* 1980 U.S.C.C.A.N. at 4271.  This language does not take any position on the ultimate scope of the Household Goods Transportation Act.

Moreover, section 11711(d) explicitly states that the fee-shifting provision applies to any "motor common carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title

the plaintiff should be limited to the 100 mile radius" and noted that the weakness of the documentation was "another reason for . . . limiting the witness to . . . the 200 mile round trip." J.A. at 43A-44.

Based on these limitations, the magistrate judge recommended granting the plaintiff $62.00 in travel costs for each of his nine witnesses.  The district court adopted the magistrate judge's recommendation *in toto*.  We review the district court's award of taxation of costs for an abuse of discretion. *See Jones v. Continental Corp.*, 789 F.2d 1225, 1233 (6th Cir. 1986).

### a.)  Rate Restriction

We agree with the district court that it would have been preferable for the plaintiff to supply actual witness receipts for travel expenses; however, we believe that the district court abused its discretion when it limited witness expenses to $0.31 per mile.

Actual receipts are not required by statute or case law. 28 U.S.C. § 1821(c)(1), which discusses the payment of a witness' expenses for travel on a common carrier, specifically states that "[a] receipt *or other evidence* of actual cost shall be furnished." 28 U.S.C. § 1821(c)(1) (1994) (emphasis added). Accordingly, federal courts have not required prevailing parties to present actual receipts and have allowed them to include affidavits instead. *See Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 65 (5th Cir. 1994).

In this case, plaintiff submitted a list of the travel expenses incurred by his witnesses.  This list was accompanied by an affidavit in which his attorney swore that the taxed bill of costs was correct and that "the services for which fees have been charged were actually and necessarily performed." J.A. at 117.  Given that the defendant did not supply any evidence that these costs were not actually incurred, we find that the magistrate judge's skepticism of the witness' costs is unfounded.

magistrate judge denied Trepel Attorney's fees on the grounds that, plaintiff was not entitled to them under the Household Goods Transportation Act, he never reached the question of whether Trepel had waived his right to attorney's fees. Given that the district court adopted the magistrate judge's report *in toto*, it did not reach the waiver issue either.  In light of our holding that Trepel is entitled to attorney's fees under § 11711(d), we remand this case to the district court to determine whether Trepel waived his right to attorney's fees.

**B.   Taxed Costs**

**1.   Travel Expenses**

On September 12, 1997, plaintiff filed a bill of costs. Plaintiff's bill of costs sought to tax the travel costs of his witnesses from New York (Dr. Koestler, Dr. Stevenson, Mr. Kahan, Mr. Chisholm, Mr. Newton, Mr. Oliver); Baltimore; (Dr. Lamp); Paris (Ms. Ndiaye); and Phoenix (Ms. Hahn). Trepel claimed that the total amount of these travel costs was $12,716.35.

After reviewing the plaintiffs bill of costs, the magistrate judge recommended limiting Trepel's witnesses travel expenses to $0.31 per mile.  The magistrate judge stated that this limit was justified because Trepel only submitted demands for payment from his witnesses, and did not supply the witnesses' actual receipts.  He indicated that "[g]iven the weakness of the supporting documentation" the reasonableness of the plaintiff's demands for payment, which included over $1,000 for cab fare, was "seriously in question."

Citing the Supreme Court's decision in *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227 (1964), the magistrate judge also proposed that since Trepel had not obtained  the trial court's approval to bring out-of-state witnesses to testify, he should not be awarded costs for any travel that was not within 100 miles of the Courthouse.  The magistrate judge did not specifically discuss the reasons for this limit.  He merely stated that "the Magistrate Judge finds in his discretion that

. . . ."[4]  49 U.S.C. § 11711(d) (1993) (repealed 1995).  Since Roadway undisputedly falls within this description, the plain language of the statute indicates that the fee-shifting provisions apply to Roadway Express.   Given that the statutory language is unambiguous, and there is no clearly expressed legislative intent to the contrary, we find that the language of the statute is conclusive. *See Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir. 1988) ("If we find that the statutory language is unambiguous, then that language is regarded as conclusive unless there is clearly expressed legislative intent to the contrary.") (citing *United States v. Premises Known as 8584 Old Brownsville Road, Shelby County, Tennessee*, 736 F.2d 1129, 1130 (6th Cir.1984)).

**b.)   Household Goods Covered**

Roadway Express also argues that this statute does not apply to the Baga serpent because it is an "object of art."  As noted above, section 10102(11) describes three categories of household goods: (A) "personal effects and property used or to be used in a dwelling," (B) "furniture, fixtures, equipment and the property of stores, offices, museums, [etc.,]" and (C) "objects of art, displays and exhibits."   49 U.S.C. § 10102(11) (1993) (repealed 1995).  However, the fee-shifting provisions of section 117711(d) only apply to "personal effects and property" described in section 10102(11)(A).  According to Roadway Express, the three subsections of § 10102(11) are mutually exclusive.  The

---

[4] In 1993, subchapter II of chapter 105 provided, "the Interstate Commerce Commission has jurisdiction over transportation by motor common carrier . . . to the extent that passengers, property or both, are transported by motor carrier . . . ." 49 U.S.C. § 10521 (1993) (repealed 1995).  Pursuant to 49 U.S.C. § 10102(4) the term "motor carrier" includes "motor common carriers," which are defined as persons "holding [themselves] out to the general public to provide motor vehicle transportation for compensation over regular or irregular routes, or both." 49 U.S.C. § 10102(14) (1993) (repealed 1995).  Accordingly, given that Roadway Express does not dispute that it was a "motor common carrier," it cannot dispute that it was also a "motor carrier," and that it was subject to the jurisdiction of the ICC under subchapter II of section 105.

defendant contends that since that the Baga serpent is clearly an "object of art" as described in § 10102(11)(C), it cannot be a "personal effect" or "property" under § 10102(11)(A), and is therefore not covered by the fee-shifting provisions.

In support of this interpretation, Roadway asserts that Congress intended this statute to give shippers redress when the cost of the item damaged was too small to justify the expense of litigation. Based on this intent, it argues that the fee-shifting provisions were not meant to cover "objects of art" because the owners of these expensive objects would already have a sufficient incentive to sue. Alternatively, Roadway Express argues that Trepel's serpent should fall exclusively within subsection (C) because the rules of statutory interpretation dictate that the specific provision governs over the general one. *See Morales v. Trans World Airlines*, Inc., 504 U.S. 374, 384 (1992).

We are not persuaded by either of these arguments. Roadway's argument that Congress intended to preclude customers who shipped "objects of art" from using the fee-shifting provisions because they have sufficient incentive to sue is not convincing because it overlooks the fact that many "objects of art" that people ship are of little monetary value. Roadway's interpretation would have the ridiculous effect of precluding owners of inexpensive art from making use of this statute just because the item is an "object of art" and not some other household property.[5] We do not believe that Congress intended such a scheme. If Congress wanted to exclude expensive objects from coverage under § 10102(A), it could have easily done so by implementing a dollar cap. However, it did not.

---

[5] As noted above, § 10102(11)(C) includes "objects of art . . . which because of their unusual nature *or* value require the specialized handling and equipment usually employed in moving household goods." 49 U.S.C. § 10102(11)(C) (emphasis added) (1993) (repealed 1995). Thus, an item need not be valuable to be covered by subsection (C).

Furthermore, we do not believe that the maxim that the specific provision should govern the general one is applicable in this case. The rule that a specific provision should govern a more general one is a helpful rule of thumb to apply when it is necessary to reconcile two conflicting statutory provisions. However, we see no reason to apply this rule in the instant case since there is no inherent conflict between provisions and there is nothing to reconcile. *See Gallenstein v. United States*, 975 F.2d 286, 290 (6th Cir. 1992) (The general rule that the specific governs the general "does not apply when the plain language of the two subsections can be reconciled without need for the application of a general rule.").

Finally, and most importantly, we find that Roadway's argument is not supported by the plain language of the statute. Section 11711(f) simply states that the attorney's fees provisions of the statute apply only to the types of household goods described in § 10102(11)(A). That section in turn refers to "personal effects and property" to be used in a dwelling. The Baga serpent plainly falls within this section because it is a personal effect that Trepel planned to use in his dwelling in Arizona. While it is true that the serpent is an "object of art" and also falls under subsection (C) there is nothing in the plain language of the statute to indicate that this fact precludes it from also being part of subsection (A). Accordingly, we find that the district court erred when it adopted the magistrate judge's Report and Recommendation and held that the Baga serpent is not covered by the fee-shifting provision of § 11711(d). *See Austin*, 841 F.2d at 1293 ("In determining the meaning of legislation, we must first look to the plain language of the statute itself.").

### c.)  Waiver

Before the magistrate judge, Roadway argued that even if Trepel is entitled to attorney's fees under § 11711(d), he waived his right to attorney's fees by failing to claim them in his complaint and by failing to file a motion for attorney's fees within 14 days of the entry of judgment. Since the