NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0004n.06

No. 09-2326

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Jan 04, 2011**

LEONARD GREEN, Clerk

MITCHEL OSMAN,

   Plaintiff-Appellant,

v.

INTERNATIONAL FREIGHT LOGISTICS, LTD.,

   Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

O P I N I O N

BEFORE:  BOGGS and McKEAGUE, Circuit Judges; and QUIST, Senior District Judge.[*]

  **QUIST, District Judge.** Plaintiff, Mitchel Osman, appeals the district court's order denying him attorney fees after he prevailed in a jury trial on his claim against Defendant, International Freight Logistics, Ltd. ("IFL"), under the Carmack Amendment. 49 U.S.C. § 14706(a)(1). Osman contends that the district court erred in concluding that a legislative note limits fee awards under 49 U.S.C. § 14708(d) to claims against household goods motor carriers. Alternatively, he argues that the legislative note does not abrogate existing law allowing attorney fees against "freight forwarders." Finding no error, we affirm.

---

  [*]Honorable Gordon J. Quist, United States Senior District Judge for the Western District of Michigan, Sitting by Designation.

## I. FACTS AND PROCEDURAL HISTORY

In December 2007, Osman purchased a decorative ceiling lamp made of opaline glass and brass at a design show in Miami, Florida, for $12,000.00. Osman arranged to have IFL pack, ship and deliver the lamp to Mt. Pleasant, Michigan. IFL transported the lamp to its offices in New York. At that point, IFL arranged for Towne Air Freight ("TAF") to transport the lamp to Osman. When TAF delivered the lamp, Osman and his wife discovered that it had been destroyed during transport. Osman filed a damage claim with IFL and TAF, and IFL denied the claim.

Osman sued IFL and TAF in the state district court, asserting state law claims based on the destruction of the lamp. IFL and TAF removed the case to federal court on the basis of federal question jurisdiction under the Carmack Amendment, 49 U.S.C. § 14706. The federal district court granted summary judgment to TAF, and the case proceeded to trial on the claim against IFL. The jury found IFL liable and rendered a verdict for Osman.

Following the trial, Osman moved for an award of attorney fees pursuant to 49 U.S.C. § 14708(d). IFL argued, among other things, that it could not be liable for fees under § 14708(d) because that provision authorizes fee awards only against household goods motor carriers, and IFL does not qualify as a household goods motor carrier. During a hearing on Osman's motion, the district court *sua sponte* inquired whether a legislative note added to 49 U.S.C. § 13102 in 2005 precluded Osman's claim for fees under § 14708(d), and the court directed the parties to file supplemental briefs on the issue. After receiving the supplemental briefs, the district court denied

Osman's motion, concluding that the note "clearly indicates that § 14708(d) [allowing attorney fees] only applies to household goods motor carriers as defined in 49 U.S.C. § 13102(12)."

Osman filed this timely appeal.

## II. STANDARD OF REVIEW

Although this court generally reviews a district court's denial of attorney fees for abuse of discretion, *Jones v. Blige*, 558 F.3d 485, 494 (6th Cir. 2009), we review such a denial *de novo* when the denial is based upon the construction of a statute. *Trepel v. Roadway Express, Inc.*, 266 F.3d 418, 421 (6th Cir. 2001).

## III. ANALYSIS

### A. Limitation of Fees Under § 14708(d)

The Carmack Amendment, enacted in 1906 as an amendment to the Interstate Commerce Act of 1887, renders common carriers liable for "actual loss or injury to . . . property" during interstate transport. 49 U.S.C. § 14706(a); *see also Am. Rd. Serv. Co. v. Consol. Rail Corp.*, 348 F.3d 565, 568 (6th Cir. 2003). The statute covers two types of parties involved in the interstate shipment of goods: "carriers" and "freight forwarders." 49 U.S.C. § 14706(a). It is undisputed that IFL qualifies as both a carrier and a freight forwarder. *See* 49 U.S.C. § 13102(3) (defining "carrier" as "a motor carrier, a water carrier, and a freight forwarder"); 49 U.S.C. § 13102(8) (defining a "freight forwarder" as "a person holding itself out to the general public . . . to provide transportation of property for compensation" and who, among other things, "assumes responsibility for the transportation from the place of receipt to the place of destination").

The Carmack Amendment does not contain a general attorney fee provision, *Accura Sys., Inc. v. Watkins Motor Lines, Inc.*, 98 F.3d 874, 876 (5th Cir. 1996), but it does authorize fee awards in

limited circumstances to shippers of "household goods." 49 U.S.C. §14708(d). Section 14708(d)

provides, in relevant part:

> **Dispute settlement program for household goods carriers**
>    . . . .
>
> **(d)  Attorney's fees to shippers.**  In any court action to resolve a dispute between
> a shipper of household goods and a carrier providing transportation or service subject
> to jurisdiction under subchapter I or III of chapter 135 concerning the transportation
> of household goods by such carrier, the shipper shall be awarded reasonable
> attorney's fees if – . . . .

49 U.S.C. § 14708(d) (2005).  It is undisputed that the lamp qualifies as a "household good," 49

U.S.C. § 13102(10) ("household goods" are "personal effects and property used or to be used in a

dwelling" and for which transportation is "arranged and paid for by the householder"), and that

Osman otherwise satisfied all statutory requirements for an award of attorney fees.  The issue is

whether § 14708(d) applies to any carrier that transports household goods, as Osman contends, or

is limited to claims against household goods motor carriers, as defined in 49 U.S.C. § 13102(12),

as IFL contends.

Osman relies upon the plain language of § 14708(d), which specifies "a carrier," as well as

this Court's decision in *Trepel v. Roadway Express, Inc.*, 266 F.3d 418 (6th Cir. 2001).  The *Trepel*

court construed 49 U.S.C. § 11711(d), enacted as part of the Household Goods Transportation Act

of 1980, 49 U.S.C. § 10100, *et seq.*  The language of § 11711(d), which was materially

indistinguishable from that of § 14708(d), provided:

> (d)  In any court action to resolve a dispute between a shipper of household goods
> and a motor common carrier providing transportation subject to the jurisdiction of
> the Commission under subchapter II of chapter 105 of this title concerning the

transportation of household goods by such carrier, the shipper shall be awarded reasonable attorney's fees if – . . . .

The purpose of the attorney fees provision, the court explained, was to encourage carriers to provide an inexpensive means for resolving certain claims:

> One of the problems apparently faced by shippers of household goods was that common carriers refused to recognize their claims because the carriers knew that few household goods shippers would engage in an expensive lawsuit to recover for damage to common household items of relatively little value. In order to rectify this problem, the Household Goods Transportation Act proposed that shippers provide arbitration and dispute resolution programs so that customers could recover damages without going to court.
>
> In order to "encourage" carriers to make dispute settlement programs available, the Household Goods Transportation Act stipulated that common carriers who did not make a dispute resolution program available would be liable for attorney's fees if a customer prevailed on his claim.

266 F.3d at 421 (footnote and internal citation omitted). The defendant in *Trepel*, Roadway Express, argued that it could not be liable for attorney fees under § 11711(d) because it was not a part of the household moving industry, to which the legislation was specifically addressed. The court rejected the argument, noting that "the legislative history does not clearly indicate that Congress intended the fee-shifting provision of section 11711(d) to apply solely to the household goods moving industry." *Id.* at 422. In addition, the court observed, § 11711(d) covered Roadway Express because it specifically applied to any "motor common carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of this title." *Id.* at 423 (internal quotation and footnote omitted).

Section 11711(d) was moved to § 14708(d) as part of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), Pub. L. No. 104-88, 109 Stat. 803 (1995). As part of the recodification, the former dispute settlement provisions under § 11711 were revised to require household goods carriers to offer neutral arbitration as a means of resolving disputes and to give shippers notice of the availability of arbitration "before such goods are tendered to the carrier for transportation." 49 U.S.C. § 14708(b); *see Ward v. Allied Van Lines, Inc.*, 231 F.3d 135, 141 (4th Cir. 2000).

In 2005, Congress enacted the Safe, Accountable, Flexible, Efficient Transportation Equity Act, Pub. L. No. 109-59, 119 Stat. 1144 (2005). Subtitle IV.B, entitled the "Household Goods Mover Oversight Enforcement and Reform Act of 2005," enacted several new provisions governing household goods carriers. Pub. L. No. 109-59, § 4201, *et seq*. Significantly, the statute added the following definition for "household goods motor carrier":

> a motor carrier that, in the ordinary course of its business of providing transportation of household goods, offers some or all of the following additional services:
> (i) Binding and nonbinding estimates.
> (ii) Inventorying.
> (iii) Protective packing and unpacking of individual items at personal residences.
> (iv) Loading and unloading at personal residences.

49 U.S.C. § 13102(12) (2005). In addition, the statute imposes new registration requirements for household goods motor carriers, 49 U.S.C. § 13902(a)(2), and authorizes State attorneys general to file civil actions in federal district court to enforce consumer protection provisions relating to the delivery and transportation of household goods by household goods motor carriers. 49 U.S.C. §

7

14711(a). Finally, and most significantly for this case, Congress included the following provision as § 4202(c) of the statute:

> Application of certain provisions of law. The provisions of title 49, United States Code, and this subtitle (including any amendments made by this subtitle), *that relate to the transportation of household goods apply only to a household goods motor carrier* (as defined in section 13102 of title 49, United States Code).

Pub. L. No. 109-59 § 4202(c); 119 Stat. 1752 (2005) (emphasis added).

As the district court correctly observed, the provision, though called a legislative note by the codifiers, was enacted by Congress and is entitled to the same weight as any other law, regardless of whether it was codified in the United States Code. *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1251 (11th Cir. 2005) ("That the [Torture Victim Protection Act], which was published in the Statutes at Large, appears in the United States Code as a historical and statutory note to the Alien Tort Act does not make the TVPA any less the law of the land."). Osman does not argue that the legislative note lacks the force of law or should be disregarded as a part of the statutory analysis of § 14708(d). Rather, he contends that it fails to show Congress's "clearly expressed" intent to abrogate the holding in *Trepel*. Given the note's unambiguous directive that provisions relating to the transportation of household goods apply *only* to carriers meeting the definition of a household goods motor carrier set forth in 49 U.S.C. § 13102(12), Osman's argument lacks merit. Consistent with the purposes of the Household Goods Transportation Act of 1980 and Household Goods Mover Oversight Enforcement and Reform Act of 2005, the note clarifies that the provisions relating to the transportation of household goods, including § 14708(d), are directed only toward those carriers that are engaged in the household goods moving industry. "If the language of the statute is clear, this

8

court's inquiry is at an end: where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Palmer v. United States* (*In re Palmer*), 219 F.3d 580, 583 (6th Cir. 2000) (internal quotation marks omitted). Thus, the note must be applied according to its plain language.

Osman also makes much of the fact that in adopting the 2005 amendments, Congress inserted the defined term "household goods motor carrier" in several sections, *see e.g.,* 49 U.S.C. § 13902(a)(2), but failed to insert that term in § 14708(d). He asserts that the district court's "overly-broad application" of the note violates several cardinal rules of statutory construction, but he fails to explain how such rules could limit the note's clear directive circumscribing provisions relating to the transportation of household goods.

Finally, Osman argues that the legislative history fails to support the abrogation of *Trepel*, but this argument fails because where, as here, "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 990 (6th Cir. 1998) (internal quotation marks omitted). Thus, the district court's statutory construction was proper.

## B.    IFL's Freight Forwarder Status

Osman argues that even if the legislative note limits the award of fees under § 14708(d) to claims involving household goods motor carriers, it does not alter preexisting law recognizing that freight forwarders can be held liable for attorney fees under § 14708(d). He contends that because the district court found that IFL was also acting as a freight forwarder, § 14708(d) authorizes an

award of fees against IFL based upon that status. The district court rejected the argument, noting that § 14708(d) only authorizes fee awards against carriers.

We agree with the district court's conclusion, but offer a slightly expanded rationale. Attorney's fees under § 14708(d) may be awarded only in an action against a "carrier." The term "carrier" includes "a freight forwarder," 49 U.S.C. § 13102(3) – a capacity in which IFL was also acting. As discussed above, however, the legislative note to 49 U.S.C. § 13102 narrowed the universe of carriers to which § 14708(d) applies, namely household goods motor carriers. Thus, regardless of a carrier's status as a freight forwarder, it cannot be liable unless it qualifies as a household goods motor carrier, which IFL does not.

### C.     Remand

Lastly, Osman argues that we should remand the case to the district court for determination of whether IFL acted as a household goods motor carrier. We decline to do so. Arguments first raised in a reply brief on appeal are deemed waived. *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993). Moreover, Osman had sufficient opportunity to raise this issue in the district court, but he failed to do so.

### IV. CONCLUSION

For the foregoing reasons, we conclude that the district court properly held that the legislative note precludes attorney fees awards against motor carriers that do not meet the definition of "household goods motor carrier" under 49 U.S.C. § 13102(12). The district court's order is therefore **AFFIRMED**.